1  R. Craig Clark (SBN 129219)
2  James M. Treglio (SBN 228077)
   Dawn M. Berry (SBN 292355)
3  Veronika Snoblova (SBN 297618)
   **CLARK & TREGLIO**
4  205 West Date Street
   San Diego, CA 92101
5  Telephone: (619) 239-1321
6  Facsimile: (888) 273-4554

7  Attorneys for Plaintiff and the Putative Class

8

9                 UNITED STATES DISTRICT COURT

10             SOUTHERN DISTRICT OF CALIFORNIA

11

12

13  EVAN PARENT, an individual on        CASE NO.: 15-cv-01204-GPC-WVG
    behalf of himself, a class of persons
14  similarly situated, and the general   **CLASS ACTION**
    public,
                                          **PLAINTIFF'S OPPOSITION TO**
15                      Plaintiffs,       **DEFENDANT'S MOTION TO**
                                          **DISMISS**
16              v.

17

18  MILLERCOORS LLC, a Delaware
    Limited Liability Company authorized
19  to do business in California, and DOES   Date: September 25, 2015
    1 to 50 inclusive,                       Time: 1:30 p.m.
20                                           Courtroom: 2D
                         Defendants.         Judge: Hon. Gonzalo P. Curiel
21

22

23  ///

24  ///

25  ///

26  ///

27  ///

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     FACTUAL ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    LEGAL STANDARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.     ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.      Defendant's Representation of Blue Moon As An Independently
                Brewed Craft Beer Is Deceptive and Misleading . . . . . . . . . . . . . . . . 5
                1.  The Term "Craft Beer" Is Well Defined  . . . . . . . . . . . . . . . . . . . . 5
                2.  Reasonable Consumer Would Likely Be Deceived By Defendant's
                    Representation of Blue Moon As A Craft Beer . . . . . . . . . . . . . . 8

        B.      The Safe Harbor Doctrine Does Not Apply To Defendant's Conduct. . .
                . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
                1.  Defendant's Right To Use A Fictitious Business Name Is Not
                    Absolute. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
                2.  Plaintiff Challenges The Manner In Which Defendant Uses Its
                    Fictitious Business Name, Not Defendant's Right To Use It  . . . . . 14
                3.  A Reasonable Consumer Would Not Ascertain Defendant's Identity
                    From A Trademark Or Fictitious Business Name Registry. . . . . . . 16
                4.  Defendant's Concerns About The Impact Of Liability Would Have
                    Are Exaggerated and Premature. . . . . . . . . . . . . . . . . . . . . . . . . 18

        C.      Plaintiff Adequately Pled His Claims Under Rule 9(b). . . . . . . . . . . . 20

        D.      Plaintiff Has Standing To Pursue Injunctive Relief. . . . . . . . . . . . . . . 22

        E.      In The Alternative, The Court Should Grant Plaintiff Leave To Amend.
                . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

V.      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

i

1

# <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Ashcroft v. Iqbal*
4   556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Barquis v. Merchants Collection Assn.*
5   7 Cal. 3d 94 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

6   *Bell Atlantic Corp. v. Twombly*
7   550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13

8   *Cafasso v. Gen. Dynamics C4 Sys.*
    637 F.3d 1047 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

9   *Carney v. Verizon Wireless Telecom, Inc.*
10   2010 U.S. Dist. (S.D. Cal. May 13, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . .14

11   *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*
    20 Cal. 4th 163 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

12   *Chacanaca v. Quaker Oats Co.*
13   752 F. Supp. 2d 1111 (N.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . .20

14   *Clancy v. Bromley Tea Co.*
    2013 U.S. Dist. (N.D. Cal. Aug. 9, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . 20
15
    *Colgan v. Leatherman Tool Group, Inc*
16   135 Cal. App. 4th 663 (S.D. Cal. Mar. 18, 2015). . . . . . . . . . . . . . . . . . . . .9

17   *Cornerstone Propane Partners, L.P. Sec. Litig.*
    355 F. Supp. 2d 1069 (C.D. Cal 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
18
    *Cruz v. Anheuser-Busch, LLC*
19   2015 U.S. Dist. (C.D. Cal. June 3, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

20   *Davis v. HSBC Bank*
21   691 F.3d 1152 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 19

22   *Dumas v. Kipp*
    90 F.3d 386 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

23   *FDIC v. Meyer*
24   510 U.S. 471 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

25   *Firoze A. Fakhri D.B.A. Int'l Trading Co. v. United States*
    31 C.I.T. 1287 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
26
    *Freeman v. Time, Inc.*
27   68 F.3d 285 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

28

*Gilligan v. Jamco Dev. Corp.*
  108 F.3d 246 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Henderson v. Gruma Corp.*
  2011 U.S. Dist. (N.D. Cal. Apr. 11, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Herr v. Nestle U.S.A., Inc.*
  109 Cal. App. 4th 779 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Hodgers-Durgin v. de la Vina*
  199 F.3d 1037 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Hoffman v. Fifth Generation*
  14-cv-2569 JM (S.D. Cal. Mar. 18, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*H.S.W. Enters. v. Woo Lae Oak, Inc.*
  171 F. Supp. 2d 135 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*Hydrotech Systems, Ltd. v. Oasis Waterpark*
  52 Cal. 3d 988 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Jou v. Kimberly-Clark Corp.*
  2013 U.S. Dist. (N.D. Cal. Dec. 10, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*Kasky v. Nike, Inc.*
  27 Cal. 4th 939 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Lavie v. Procter & Gamble Co.*
  105 Cal. App. 4th 496 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Levitt v. Yelp! Inc.*
  765 F.3d 1123 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Lopez v. Smith*
  203 F.3d 1122 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

*Lucas v. Jos. A. Bank Clothiers, Inc.*
  2015 U.S. Dist. (S.D. Cal. May 11, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*Manzarek v. St. Paul Fire & Marine Ins. Co.*
  519 F.3d 1025 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Marty v. Anheuser-Busch Cos., LLC.*
  43 F.Supp.3d 1333 (S.D. Fla. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 17

*Mayfield v. United States*
  599 F.3d 964 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Muscarello v. United States*
  524 U.S. 125 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Navarro v. Block*
  250 F.3d 729 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

iii

*Podolsky v. First Healthcare Corp.*
  50 Cal. App. 4th 632 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Rahman v. Mott's LLP*
  2014 U.S. Dist. (N.D. Cal. Oct. 15, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*Rojas v. Gen. Mills, Inc.*
  U.S. Dist. (N.D. Cal. March 26, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Schnall v. Hertz Corp.*
  78 Cal. App. 4th 1144 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*passim*

*South Bay Chevrolet v. General Motors Acceptance Corp.*
  72 Cal. App. 4th 861, 886 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Williams v. Gerber Prods. Co.*
  552 F.3d 934 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*passim*

**Statutes**

27 C.F.R. § 7.20(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

27 C.F.R. § 7.23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

27 C.F.R. § 7.29(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

27 C.F.R. § 7.54(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

27 C.F.R. § 25.142(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

27 C.F.R. § 7.23(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Cal. Civ. Code § 1770(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Fed. R. Civ. P.15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

# I.     INTRODUCTION

Touting the numerous awards it has won, Defendant MillerCoors, LLC ("MillerCoors") argues there is nothing improper about calling Blue Moon beer a craft beer, because "craft" simply means to make something with care or skill. Not only does MillerCoors' argument mischaracterize the present dispute, but it also ignores the fact that the term "craft beer" has a well-defined, commonly understood meaning. To be clear, this is not a dispute about the quality or popularity of Blue Moon beer. Rather, it is about whether Blue Moon beer is what MillerCoors portrays it as. Namely an independently brewed craft beer.

Plaintiff Evan Parent ("Plaintiff") is a long time home brewer and avid craft beer drinker. Over a two year period, he frequently purchased Blue Moon beer, erroneously believing that it was a microbrew, or craft beer. Plaintiff contends had he known that Blue Moon is not a craft beer, but rather a mass produced beer made by the second largest brewer in the United States, he would not have purchased it, or at least would have only purchased it at a price more consistent with other MillerCoors products.

Plaintiff, however, did not form his belief about Blue Moon beer on his own. Rather, he, like most consumers, relied on the Blue Moon label and packaging, on the Blue Moon Brewing Company website, and on advertisements for Blue Moon, including print ads, commercials, and Blue Moon's YouTube channel. For its part, MillerCoors made it particularly easy for Plaintiff to mistakenly believe Blue Moon was an independently brewed craft beer. This is because MillerCoors goes to great lengths to ensure that consumers like Plaintiff do not discover the truth about Blue Moon beer – that it is a mass produced beer brewed by MillerCoors.

MillerCoors' deception runs deep. First, the company uses the fictitious business name "Blue Moon Brewing Company" and implies that Blue Moon beer is brewed at a small, limited capacity brewery, located inside a baseball stadium. Next,

MillerCoors painstakingly omits any reference to the MillerCoors name on the Blue Moon website, on the Blue Moon label, on Blue Moon packaging, and in all Blue Moon advertising. Finally, MillerCoors employs the terms "craft" and "craft beer," as well as the company's trademarked phrase "Artfully Crafted," to further (and falsely) portray Blue Moon as an independently brewed craft beer. Intentionally disassociating Blue Moon beer from the MillerCoors name, not only allows the company to keep consumers in the dark, but also to capitalize on their confusion about Blue Moon beer and tap into the multi-billion dollar craft beer market.

For these reasons, and the reasons set forth below, Plaintiff respectfully requests that the Court deny MillerCoors' Motion to Dismiss.

## II.   FACTUAL ALLEGATIONS

Craft brewing is a multi-billion dollar industry. In the state of California alone, the economic impact of craft brewing is estimated to exceed $4.5 billion. (Compl. ¶ 12.) This is due, in part, to the fact that consumers, including Plaintiff, are willing to pay, and do pay, a premium for craft beers. (Compl. ¶ 13.) On average, craft beer costs $2.00 to $3.00 more per six pack than a mass produced beer. (Compl. ¶ 13.) The Brewers Association, an organization dedicated to promoting and protecting American craft brewers, defines the term "craft brewery" as a one that is "small, independent and traditional." (Compl. ¶ 14.) More specifically, a craft brewery must be less than 25 percent owned or controlled by a non-craft brewer. (Compl. ¶ 14.)

MillerCoors, through its predecessors and parent companies, SAB Miller and Molson Coors Brewing Company, began brewing Blue Moon beer in 1995 in order to compete in the burgeoning craft beer market. (Compl. ¶¶ 9, 16.) Based on the volume of beer it produces and the ownership interests of its parent companies, MillerCoors does not qualify as a "craft brewer," and thus Blue Moon does not qualify as a "craft beer," as the terms are commonly defined. (Compl. ¶¶ 15, 21.) Nonetheless, in order to capture a share of the multi-billion dollar craft beer market, MillerCoors advertises and sells Blue Moon beer under the name, Blue Moon

2

Brewing Company.[1] (Compl. ¶ 16.)

While there is in fact a Blue Moon Brewing Company in Denver, it is a small, limited capacity brewery located inside Coors Field, home to the Colorado Rockies baseball team. (Compl. ¶ 17.) The Blue Moon beer purchased by putative Class Members in California however, is not brewed at the Blue Moon Brewing Company. (Compl. ¶ 17.) Rather, it is brewed in one of MillerCoors' massive brewing facilities, alongside the company's other beers, including, Milwaukee's Best, Miller High Life, and Icehouse. (Compl. ¶ 17.)

Between 2011 and mid-2012, Plaintiff frequently purchased Blue Moon beer from San Diego-area retailers, including Ralph's, Vons, and 7-11, for personal and family consumption. (Compl. ¶¶ 8, 21.) Relying on its advertising, its placement among other craft beers, and the premium price it commanded, Plaintiff, a beer aficionado and home brewer, purchased Blue Moon believing it was a craft beer. (Compl. ¶ 21.) In July 2012, Plaintiff learned that Blue Moon is not a craft beer, as the term is commonly defined, but rather a mass produced beer brewed by MillerCoors. (Compl. ¶ 22.) Plaintiff contends that absent MillerCoors' misrepresentations and omissions, he would not have purchased Blue Moon beer, or would have only purchased it at a lower price. (Compl. ¶¶ 22, 55.)

On April 24, 2015, Plaintiff filed suit alleging that MillerCoors' conduct violates California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA").

## III.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

---

[1] This appears to have been MillerCoors' strategy from the very beginning. In 1995, when research showed that 30 percent of consumers would not buy a MillerCoors product, Coors' then-CEO, referring to Blue Moon beer, was quoted as saying, "The specialty products will not say 'Coors.' We want them disassociated from the Coors family." *See* Gideon Markman & Phillip Phan, ed., The Competitive Dynamics of Entrepreneurial Market Entry 138 (2011).

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

15-cv-01204-GPC-WVG

2001). The issue before the court "is not whether the plaintiff will ultimately prevail, but whether the [plaintiff] is entitled to offer evidence to support the claims" asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). To survive dismissal under a 12(b)(6) motion, the complaint need not include detailed factual allegations; rather it must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[E]valuating a complaint's plausibility is a 'context-specific' endeavor that requires courts to 'draw on . . . judicial experience and common sense.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014)). However, on a 12(b)(6) motion, courts must accept all allegations of material fact as true and "construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## IV.   ARGUMENT

**A.    Defendant's Representation of Blue Moon As An Independently Brewed Craft Beer Is Deceptive And Misleading**

### 1.    The Term "Craft Beer" Is Well Defined

MillerCoors argues that its use of the terms "craft beer" and "crafted" is not misleading because there is no controlling legal definition of craft beer. (Def.'s Mem. of P. & A. ["Def.'s Mem."] at 11.) Instead, MillerCoors urges the Court to "construe the term 'craft' in accordance with its ordinary or natural meaning," which according to Webster's Dictionary is, 'to make or produce something with care or skill." (Def.'s Mem. at 12.) However, if MillerCoors had looked a few entries further, it would have discovered that the same dictionary it cites also defines the term "craft beer." That is, "a specialty beer produced in limited quantities." Merriam-Webster Dictionary, http://merriam-webster.com (last visited Aug. 14, 2015).

4

1     Where there is no legal or controlling definition of a term, courts construe the

2 term in accordance with its ordinary or natural meaning. *See FDIC v. Meyer*, 510

3 U.S. 471, 476 (1994). Courts frequently turn to dictionaries to determine a term's

4 ordinary or natural meaning. *See e.g., Muscarello v. United States*, 524 U.S. 125, 128

5 (1998) (consulting various dictionaries for the meaning of the word "carry").

6 However, where a term is used to describe a particular product, the term's ordinary

7 or natural meaning must be considered in the context of that product. *See Cruz v.*

8 *Anheuser-Busch, LLC*, 2015 U.S. Dist. LEXIS 76027, at * 22 (C.D. Cal. June 3,

9 2015) ("[T]he meaning of 'light' with respect to malt beverages . . . is defined as a

10 product that contains fewer calories than others of its kind.").

11     Although terms like "craft brewer," "craft brewery," and "craft beer" have

12 become increasingly popular (and marketable), the terms are not new, and are

13 certainly not without commonly understood meanings. As far back as 1986, a "craft

14 brewery" was defined as a "small brewery using traditional methods and ingredients

15 to produce a handcrafted, uncompromised beer that is marketed locally (and is) True

16 Beer." Vince Cottone, <u>Good Beer Guide: Breweries and Pubs of the Pacific</u>

17 <u>Northwest</u> 9 (1986). In 1996, the Institute for Brewing Studies, a division of the

18 Association of Brewers, in Boulder, Colorado, defined "craft brewer" as one that "is

19 not more than one-third owned (or the economic equivalent) by another company of

20 greater than $50 million revenue that is not itself a craft brewer." Institute for

21 Brewing Studies, <u>Craft Brewing Industry Fact Sheet</u> (1996). Webster's Dictionary

22 currently defines "craft beer" as "a specialty beer produced in limited quantities."

23 Combined, these definitions make it clear that a craft beer is one that is brewed by a

24 craft brewer. Moreover, the definitions form the basis of the Brewers Association's

25 definition of a craft brewer, which is summarized as one that is "small, independent

26 and traditional." *See* Brewers Association, http://www.brewersassociation.org/

27 statistics/craft-brewer-defined (last visited Aug. 19, 2015).

28     MillerCoors' contends that the various awards it has won are evidence that the

5

company uses "care and skill to craft award-winning Blue Moon beers with experimentation and creativity." (Def.'s Mem. at 12.) As such, MillerCoors argues that its use of the term "craft" is entirely consistent with its normal meaning. (Def.'s Mem. at 12.) However, because the terms "craft brewer" and "craft beer" have well defined, commonly understood meanings, including a definition from the very same dictionary that MillerCoors relies on for its definition of "craft," the company's argument is without merit. After all, the present dispute is about beer, not scrapbooking. Moreover, which meaning a reasonable consumer would ascribe to a particular term is generally not a question that can be resolved on a Rule 12(b)(6) motion. *Jou v. Kimberly-Clark Corp.*, 2013 U.S. Dist. LEXIS 173216, at *29 (N.D. Cal. Dec. 10, 2013).

Reiterating its preference for the term "craft," as opposed to "craft beer," MillerCoors next contends that its use of the terms "craft" and "crafted" merely express its subjective opinion that Blue Moon beer is produced with care or skill. (Def.'s Mem. at 12.) Without actually using the term, MillerCoors seems to suggest that its use of the terms constitutes non-actionable puffery. *See Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1087-88 (C.D. Cal. 2005) (a statement constitutes puffery if it is "not capable of objective verification"). On their own, the terms "craft" and "crafted" might reasonably state MillerCoors' subjective opinion of Blue Moon beer, however, when used in conjunction with other representations about the product, the terms can reasonably be construed as having specific meaning, and are thus actionable. *See Jou*, 2013 U.S. Dist. LEXIS 173216 at *30-31 (use of the term "natural" in conjunction with the term "pure & natural" would likely mislead a reasonable consumer to believe the product is free of synthetic ingredients); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 n.3 (defendant's claim that a product was "nutritious" was not mere puffery because it contributed to the deceptive context of the packaging as a whole); *Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333, 1342 (statement that beer is

6

"German Quality" must be considered in conjunction with: (1) other statements on the packaging, (2) defendant's overall marketing campaign and its efforts to maintain Beck's brand identity as a German beer, and (3) the beer's 139-year history of being brewed in Germany).

Ultimately, MillerCoors attempts to argue both sides of the coin – first, that the term craft beer has no specific meaning, and then, that the company believes Blue Moon is a craft beer. If the term "craft beer" has no specific meaning or special significance, it begs the question, why then does MillerCoors go to such great lengths to pass Blue Moon off as a craft beer? The answer likely lies in the billions of dollars that Californians spend on craft beer each year.

### 2. A Reasonable Consumer Would Likely Be Deceived By Defendant's Representation Of Blue Moon As A Craft Beer

Next, MillerCoors argues, "Given the nature of MillerCoors' operations, and its commonplace disclosures that it brews Blue Moon beer, no reasonable consumer viewing its advertising and/or website would reasonably believe that Blue Moon is independently produced on a small scale." (Def.'s Mem. at 14.) This argument is preposterous.

Claims brought under California's UCL, FAL, and CLRA, are governed by the "reasonable consumer" test. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) ("[T]he false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer."). A reasonable consumer is neither the most vigilant and suspicious of advertising claims nor the most unwary and unsophisticated, but instead is "the ordinary consumer within the target population." *Lavie v. Procter & Gamble Co.*,105 Cal. App. 4th 496, 509-10 (2003). In order to prevail under the reasonable consumer standard, a plaintiff must show that members of the public are likely to be deceived. *Id*. The California Supreme Court has recognized that the UCL and the FAL "prohibit not only advertising which is false, but also advertising which[,] although true, is either

actually misleading or *which has a capacity, likelihood or tendency to deceive or confuse the public.*" *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002) (emphasis added).

Here, it is unclear exactly what "commonplace disclosures" MillerCoors is referring to. Assuming perhaps, that the company is referring to its registration of the Blue Moon Brewing Company trademark and fictitious business name, as discussed *infra* Part IV.B.3, these by no means constitute "commonplace disclosures." A reasonable consumer does not peruse California's Fictitious Business Name registry prior to purchasing a six pack of beer at the local supermarket.[2] Of course, MillerCoors could also be referring to the numerous articles that have been written over the past year, calling into question the company's blatant attempts to blur the line between Blue Moon beer and true craft beers, but those hardly qualify as disclosures either. *See, e.g.,* How Blue Moon Made 'Craft Beer' Meaningless, http://www.marketwatch.com/story/how-blue-moon-made-craft-beer-meaningless-2015-05-01 (last visited Aug. 16, 2015).

In arguing that no reasonable consumer viewing its advertising and website would believe that Blue Moon is independently produced on a small scale (in other words, a craft beer), MillerCoors offers no explanation as to how it came to this conclusion. It also ignores overwhelming evidence pointing to the company's practice of intentionally omitting any reference to MillerCoors on the Blue Moon website and in all Blue Moon advertising. For example, nowhere in brewmaster Keith Villa's biography does it mention that he was employed by MillerCoor's when he allegedly "founded" Blue Moon Brewing Company. (Hussey Decl. ¶ 2, Ex. A.)

_____

[2] In California, fictitious business names are registered at the county level. However, even if a consumer knew which of the 58 counties in California to search, the most he or she would be able to determine is that Blue Moon Brewing Company is a fictitious business name. There is no indication whatsoever that the name is an alter ego of MillerCoors.

PLAINTIFF'S OPPOSITION TO                                                    15-cv-01204-GPC-WVG
DEFENDANT'S MOTION TO DISMISS

Equally telling is the fact that the Blue Moon website fails to include an address or telephone number – information that might actually help consumers discover MillerCoors' ownership interest in Blue Moon beer. Rather, in order to contact the company, consumers are required to input their information, including their full name and street address, and presumably wait to be contacted by someone from "the Blue Moon Brewing Company." MillerCoors undoubtedly recognizes that few people are willing to go to such lengths to seek out information that is typically disclosed. Finally, in its Motion to Dismiss, MillerCoors is quick to point out that "Blue Moon originated at Coors – as in *MillerCoors* – Field." (Def.'s Mem. at 2.) This fact however, is conspicuously absent on the Blue Moon website. Instead, in explaining the story of Blue Moon beer, the website simply states, "our brewery is located in a baseball stadium." Blue Moon Brewing Company: Our Story, www.bluemoonbrewingcompany.com/OurStory (Aug. 16, 2015).

MillerCoors' use of the phrase "Artfully Crafted" on the Blue Moon website, in its advertising, and on its packaging further deceives consumers by falsely portraying Blue Moon beer as an independently brewed craft beer. This deception is further promulgated by the fact that retailers display Blue Moon beer alongside actual craft beers, presumably at MillerCoors' request. As discussed *supra* Part IV.A.1, MillerCoors does not qualify as a craft brewery, and thus, Blue Moon beer does not qualify as a craft beer. As such, under California's reasonable consumer standard, MillerCoors violates the UCL, the FAL, and the CLRA because the company's conduct has the capacity to deceive or confuse the public. *See Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 682 (a reasonable consumer would not expect that "Made in U.S.A." meant the product was designed and assembled in the United States, but that a significant portion of its parts were manufactured abroad); *Hoffman v. Fifth Generation*, Case No. 14-cv-2569 JM (JLB), Dkt. 15 (S.D. Cal. Mar. 18, 2015) (representing a vodka that is allegedly mass produced in automated stills as being "handmade" could arguably mislead a

reasonable consumer).

MillerCoors' deliberate omission of any reference to the MillerCoors name, along with the company's use of the term "Artfully Crafted" and the placement of Blue Moon among actual craft beers, leads reasonable consumers, including Plaintiff, to believe that Blue Moon beer is something it is not. Namely a craft beer, brewed by an independent brewer.

**B.     The Safe Harbor Doctrine Does Not Apply To Defendant's Conduct**

> **1.     Defendant's Right To Use A Fictitious Business Name Is Not Absolute**

MillerCoors argues that the safe harbor doctrine precludes Plaintiff's claims because its use of the Blue Moon Brewing Company trade name is expressly permitted by Tobacco Tax and Trade Bureau ("TTB") regulations and California law. (Def.'s Mem. at 5.) While brewers are entitled to use a trade name or a fictitious business name under federal and state law, that right is not absolute. Rather, the name cannot be misleading or deceptive.

The "safe harbor" defense prevents litigants from circumnavigating a substantive rule of law by framing the complaint as an unfair competition claim. *Davis v. HSBC Bank*, 691 F.3d 1152, 1164 (9th Cir. 2012). "When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182. In other words, a plaintiff may not bring an action under the UCL where some state or federal law permits the allegedly deceptive conduct. *See Davis*, 691 F.3d at 1165. Unlike the UCL's broad reach, the California Supreme Court has cautioned that the safe harbor doctrine must be narrowly construed. *See Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 183-84.

In order to protect consumers, TTB regulations prohibit brewers from selling beer that is not "marked, branded, and labeled in conformity with" federal law. *See* 27 C.F.R. § 7.20(b). Regulations relating to the labeling and advertising of malt

beverages, including beer, require that product labels include a brand name. 27 C.F.R. § 7.23(a). However, the regulations also make it clear that a brewer may not label beer with a brand name that, "standing alone, or in association with other printed or graphic matter, <u>creates any impression or inference as to the age, origin, identity, or other characteristics of the product</u>." *Id.* § 7.23(b) (emphasis added). To that end, section 7.29(a)(1) further provides that a label shall not contain:

> Any statement that is false or untrue in any particular, or that, irrespective of falsity, directly, or by ambiguity, omission, or inference, or by the addition of irrelevant, scientific or technical matter, tends to create a misleading impression.

Similarly, TTB regulations also prohibit statements in advertising, which either directly or by ambiguity or omission, create a misleading impression about the beer. *See* 27 C.F.R. § 7.54(a)(1).

In addition to requiring a brand name, TTB regulations also provide: "Each bottle of beer shall show by label or otherwise the name or trade name of the brewer." 27 C.F.R. § 25.142(a). This is to prevent consumers from being deceived as to the source or manufacturer of the product. Here, because the Blue Moon brand name is merely an abbreviation of the Blue Moon Brewing Company trade name, MillerCoors' right to use a trade name or fictitious business name on its labels is not absolute. Rather, its use cannot be misleading or deceptive "as to the origin, identity, or other characteristics of the product." *See* 27 C.F.R. § 7.23(b).

The interplay between the brand name and the identity of the brewer is evidenced by § 7.23(a), which states that where a product is not sold under a brand name, "the name of the person required to appear on the brand label shall be deemed a brand name." 27 C.F.R. § 7.23(a). As previously indicated, the person required to appear on the label is the name or trade name of the brewer. *See* 27 C.F.R. § 25.142(a). The significance of this is that under § 7.23(b), where the brand name is the brewer or the brewer's trade name, the name cannot "create[] any impression or inference as to the age, origin, identity, or other characteristics of the product." *See*

27 C.F.R. § 7.23(b).  This is true whether it is the name alone that creates the impression or inference, or whether the impression or inference results from the name "in association with other printed or graphic matter." *See id.* Although an exception exists where a TTB officer has determined that the brand "conveys no erroneous impressions as to the age, origin, identity, or other characteristics of the product," there is no evidence that MillerCoors meets the exception's criteria.

Plaintiff alleges that MillerCoors uses the name Blue Moon Brewing Company to deceive consumers in violation of the UCL, the FAL, and the CLRA. More specifically, Plaintiff alleges that MillerCoors intentionally uses the Blue Moon Brewing Company trade name to mislead consumers into believing that Blue Moon beer is produced at a small, limited capacity brewery located inside a baseball stadium in Denver. (Compl. ¶ 17.) In reality, the Blue Moon beer purchased by Plaintiff and putative Class Members in California is actually mass produced at a MillerCoors brewing facility. (Compl. ¶ 17.) Plaintiff also alleges that MillerCoors' use of the Blue Moon Brewing Company trade name, in conjunction with the use of the terms "craft" and "crafted," further serve to mislead consumers by implying that Blue Moon is an independently brewed craft beer, when in fact, the Blue Moon Brewing Company is an almost entirely fictitious brewery. (Compl. ¶ 19.) Finally, Plaintiff alleges that MillerCoors violates Cal. Civ. Code § 1770(a)(3) by making both affirmative misrepresentations and omissions regarding the affiliation, connection, and association between MillerCoors and Blue Moon beer. (Compl. ¶ 32.) In particular, Plaintiff alleges that MillerCoors uses the trade name Blue Moon Brewing Company to conceal its ownership of Blue Moon beer, by deliberately omitting any reference to MillerCoors on the Blue Moon Brewing Company website, on the Blue Moon label, and in Blue Moon advertising. (Compl. ¶ 18.)

While TTB regulations give MillerCoors the option of using a trade name, the company is not required to do so. Here, it is apparent that MillerCoors exercises its option to use the Blue Moon Brewing Company trade name in order to conceal its

ownership of Blue Moon beer, to pass Blue Moon off as an independently brewed craft beer, and to capture a hefty share of the multi-billion dollar craft beer market. Whether these practices constitute deception however, is generally a question of fact and thus not amenable to determination on a motion to dismiss. *See Rojas v. Gen. Mills, Inc.*, 2014 U.S. Dist. LEXIS 41315 at *9 (N.D. Cal. March 26, 2014). At this stage, the Court need only determine whether Plaintiff has plausibly alleged that a reasonable consumer would likely be deceived by MillerCoors' use of the Blue Moon Brewing Company trade name. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (a Rule 12(b)(6) motion fails where the plaintiff has sufficiently pled facts "to state a claim for relief that is plausible on its face").

### 2. Plaintiff Challenges The Manner In Which Defendant Uses Its Fictitious Business Name, Not Defendant's Right To Use It

MillerCoors' safe harbor argument also mischaracterizes the nature of Plaintiff's claims. While MillerCoors' use of the Blue Moon Brewing Company trade name may be lawful under TTB regulations, thus entitling the company to a safe harbor defense, Plaintiff is not challenging MillerCoors' right to use the trade name, but rather the deceptive and misleading manner in which the company uses it. This requires the Court to consider Plaintiff's claims in their entirety.

In *Schnall v. Hertz Corp.,* 78 Cal. App. 4th 1144 (2000), plaintiff filed a class action alleging the fuel service charge in Hertz's rental car agreement was unlawful, unfair, and fraudulent under the UCL. In sustaining Hertz's demurrer, the trial court found that the safe harbor doctrine precluded plaintiff's claims because a California statute expressly permitted rental car companies to impose charges for optional services, so long as the consumer knew that the charge was avoidable. *Id.* at 1149-51. On appeal however, the court found that while Hertz's fuel service charge was permissible under California law, and thus not actionable under the unlawful prong of the UCL, the manner in which the charge was presented to consumers was actionable under the unfair and fraudulent prongs of the UCL. *See id.* at 1157

("Hertz misleads its customers by deceptively concealing or obscuring the amount of its fuel service charge, and that [] conduct is both 'unfair' and 'fraudulent' under the UCL."). The court explained:

> Authorization of avoidable charges for optional services hardly amounts to permission to mislead customers about such charges. On the contrary, deception calculated to induce customers to subject themselves to an avoidable charge is inimical to the very concept of avoidability.

*Id.* at 1163-64.

Similarly, in *Carney v. Verizon Wireless Telecom, Inc.*, 2010 U.S. Dist. LEXIS 47161 (S.D. Cal. May 13, 2010), consumer plaintiff brought suit against Verizon, alleging that the company's practice of collecting sales tax on the full retail price of a cell phone, rather than on the sale price, violated the UCL and the CLRA. Specifically, plaintiff alleged she was told that California law required the company to collect the tax. *Id.* at *3. In addition, paperwork provided by Verizon stated that the company would collect any tax and fees it was required by law to collect. *Id.* Verizon argued it was entitled to safe harbor protection because both a California statute and a regulation allowed the company to collect tax reimbursement on the full, unbundled price of the phone. *Id.* at *14-15. The court however, held that neither the statute nor the regulation provided a safe harbor because plaintiff was not challenging Verizon's *ability* to collect the tax, but rather the manner in which Verizon *represents* the tax to consumers. *Id.* at *15 (emphasis in original). Namely, that Verizon was required by law to collect the tax, when in fact, collecting it was purely optional. *Id.*

Here, Plaintiff challenges the manner in which MillerCoors uses the Blue Moon Brewing Company trade name. Specifically, Plaintiff alleges that MillerCoors' use of the Blue Moon Brewing Company is unfair because while the name Blue Moon Brewing Company refers to a small, limited capacity brewery located inside a baseball stadium in Denver, the Blue Moon beer sold in California is actually mass produced by MillerCoors at the company's Golden, Colorado and Eden, North

Carolina breweries. (*See* Compl. ¶¶ 17, 55.) Plaintiff further alleges that
MillerCoors' use of the Blue Moon Brewing Company trade name is fraudulent
because it seeks to conceal its ownership of Blue Moon beer by omitting any
reference to the MillerCoors name on the Blue Moon Brewing Company website, on
the Blue Moon label, and in Blue Moon advertising. (*See* Compl. ¶¶ 18, 56.) Finally,
Plaintiff alleges that MillerCoors' use of the Blue Moon Brewing Company trade
name, when used in conjunction with the terms "craft" and "crafted," misleads
consumers by implying that Blue Moon is a true craft beer when in fact, Blue Moon
Brewing Company is an entirely fictitious business owned by MillerCoors. (Compl.
¶ 19.)

In addition, it is not clear that MillerCoors is entitled to a safe harbor defense,
even if a safe harbor exists. This is because, although the Blue Moon label and the
phrase "Artfully Crafted" are both trademarked for retail beer sales, the Blue Moon
Brewing Company name is trademarked for bar services. (*Compare* Def.'s Req. for
Judicial Notice ["Def.'s Req."] Ex. A and B *with* Ex. C.) More specifically, the Blue
Moon Brewing Company name is trademarked for "Bar Services; Bar featuring
Microbrewery Services; Brewpub Services." (Def.'s Req. Ex. C.) Therefore, in this
context, where one of the key issues relates to MillerCoors' practice of omitting the
MillerCoors name in the retail sale of Blue Moon beer, the Blue Moon Brewing
Company name is not protected by any trademark. Rather, the Blue Moon Brewing
Company trademark relates to the provision of services, not the retail sale of beer.
Notably, none of the other trade names MillerCoors uses, including Plank Road
Brewery, Third Shift Band of Brewers, and Tenth and Blake Beer Company, are
trademarked in this manner. (*See* Pl.'s Req. for Judicial Notice Ex. 1-3.)

While MillerCoors' use of the trade name Blue Moon Brewing Company may
be lawful under federal and state regulations, the safe harbor doctrine does not
preclude Plaintiff's claims because Plaintiff is not challenging MillerCoors' right to
use a trade name, but rather the deceptive and misleading manner in which the

company uses it. *See Schnall,* 78 Cal. App. 4th at 1163 (a determination that the defendant's conduct is lawful does not preclude separate claims under the "unfair" and "fraudulent" prongs of the UCL, where the conduct determined to be lawful is substantially different from the conduct challenged under the UCL).

### 3.   A Reasonable Consumer Would Not Ascertain Defendant's Identity From A Trademark Or Fictitious Business Name Registry

MillerCoors contends that Plaintiff could not have been deceived as to the true source of Blue Moon beer because the company properly trademarked the name Blue Moon Brewing Company and the name appears on California's Fictitious Business Name registry. (Def's Mem. at 7-8.) As such, MillerCoors argues that Plaintiff had constructive notice that the company owns the Blue Moon Brewing Company mark. (Def.'s Mem. at 8.) While these acts may very well provide MillerCoors with rights and protections among its competitors, they do little for the company with regard to California's consumer protection laws. This is because no reasonable consumer purchasing beer at a supermarket would first search the Patent and Trademark Office's database to determine if the beer he or she is about to purchase is actually brewed by someone other than the brewer identified on the product.

A closer look at the cases cited by MillerCoors makes it clear that laws relating to trademarks and fictitious business names are largely designed to protect business competition, not consumers. Indeed, none of the cases MillerCoors cites were brought under a consumer protection statute. For example, *Hydrotech Systems, Ltd. v. Oasis Waterpark*, 52 Cal. 3d 988 (1991) involved a breach of contract dispute between an unlicensed contractor and a corporate landowner. The dispute in *Firoze A. Fakhri D.B.A. Int'l Trading Co. v. United States*, 31 C.I.T. 1287 (2007) was between the U.S. Department of Customs and Border Protection and an importer who was operating under an expired fictitious business name. Finally, *H.S.W. Enters. v. Woo Lae Oak, Inc.*, 171 F. Supp. 2d 135 (S.D.N.Y. 2001) involved a plaintiff suing several defendants for infringing on its trademarks. While the court ruled that

16

defendants had constructive notice of plaintiff's identity because plaintiff had properly registered its trademarks, the parties to the dispute were businesses, not consumers. *See id.* at 138-39. As such, MillerCoors cites no authority for the proposition that Plaintiff was put on constructive notice of Blue Moon Brewing Company's true identity, based merely on MillerCoors' registration of the name.

In addition, MillerCoors seemingly ignores a long line of California case law establishing that even where a consumer has actual notice of the alleged deception, a defendant's conduct may nonetheless violate the UCL and the CLRA. For example, in *Schnall v. Hertz Corp.,* 78 Cal. App. 4th 1144, 1164 (2000), the court ruled that although Hertz had disclosed the fuel service rate it charged, the fact that it was in a small, hard-to-read document "may be indicative of an intent to conceal this important information." Similarly, in *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008), the packaging for Gerber's Fruit Juice Snacks featured pictures of various fruits. The court ruled that while the list of ingredients on the side of the box made it clear the product did not contain any of the fruits or juices of the fruits shown, a reasonable consumer could not "be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Id.* at 939; *see also Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333, 1341 (S.D. Fla. 2014) (plaintiff's belief that Beck's beer was brewed in Germany was not contradicted by the statement "Product of USA, Brauerei Beck & Co., St. Louis, MO" because plaintiff would have had to remove the beer from its outer packaging to see the disclaimer). Both *Schnall* and *Williams* make it clear that under the UCL and CLRA, the emphasis is on whether a reasonable consumer would likely be deceived, not whether the defendant attempted to clarify any deceptive statements it made. *See Schnall*, 78 Cal. App. 4th at 1164; *Williams*, 552 F.3d at 939 ("We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.").

The fact that MillerCoors trademarked and registered the Blue Moon Brewing Company name may very well protect the company in an intellectual property dispute. However, as Plaintiff's claims arise under California's consumer protection statutes, that fact is largely irrelevant. California law makes it clear that a violation can be found under the UCL "even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage. Instead, it is only necessary to show that <u>members of the public are likely to be deceived</u>." *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647-48 (1996) (emphasis added).

### 4. Defendant's Concerns About The Impact A Finding Of Liability Would Have Are Exaggerated and Premature

Finally, MillerCoors argues, "Should a court find liability under these circumstances, where a registered trade name is used instead of the parent company name, it would dramatically change the way that many corporations operate, effectively standing corporate America on its head." (Def.'s Mem. at 15.) Asserting that the use of a trade name is a common practice, MillerCoors points to a handful of "surprising" corporate relationships. (Def.'s Mem. at 15.) While the practice may indeed be common, there is absolutely no evidence that any of the companies cited use their trade name to intentionally conceal their true identity in order to deceive consumers.[3] Moreover, MillerCoors' concerns about the potential impact that a finding of liability would have are exaggerated and premature.

At issue here is not MillerCoors' use of a trade name, but rather the manner in which it uses it. In particular, Plaintiff contends that MillerCoors' use of the Blue Moon Brewing Company trade name, when coupled with its use of the term "artfully crafted" and its omission of the MillerCoors name on the Blue Moon website, on the Blue Moon label, and in Blue Moon advertising, misleads consumers to believe that

---

[3] This is evidenced by the fact that each subsidiary clearly discloses its parent company on its website. Ben & Jerry's goes so far as to explain: "We're guessing most of you know by now that Ben & Jerry's is a wholly-owned subsidiary of Unilever." Ben & Jerry's: How We're Structured http://www.benjerry.com/about-us/how-were-structured (last visited Aug. 17, 2015).

Blue Moon is an independently brewed, hand-crafted beer because the name refers to a small, limited capacity brewery. (Compl. ¶¶ 18-20.) Although MillerCoors warns that finding liability would "effectively stand[] corporate America on its head," this concern is grossly exaggerated. In reality, MillerCoors (or any other corporate defendant, for that matter) could avoid consumer confusion, and any potential liability, simply by making their ownership interest clear.

In addition, MillerCoors' argument fails to recognize that in considering consumer claims under the UCL, the FAL, and the CRLA, courts generally apply an equitable balancing test and weigh the utility of the alleged unfair business conduct against the gravity of the purported harm. That is, "courts must examine the practice's 'impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer.'" *Davis v. HSBC Bank*, 691 F.3d 1152, 1169 (9th Cir. 2012) (quoting *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886 (1999). As the California Court of Appeal explained:

> [S]ince the complaint is unlikely to reveal defendant's justification--if that pleading states a prima facie case of harm, having its genesis in an apparently unfair business practice, the defendant should be made to present its side of the story. If, as will often be the case, the utility of the conduct clearly justifies the practice, no more than a simple motion for summary judgment would be called for.

*Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000).

At a time when consumers are demanding more transparency in the products they purchase, asking brewers to truthfully identify themselves, or at minimum, to not deliberately conceal their identity, hardly threatens to stand corporate America on its head.

## C.   Plaintiff Adequately Pled His Claims Under Rule 9(b)

Next, MillerCoors argues that Plaintiff's pleading "does not even come close to the heighted [sic] pleading standard of Rule 9(b)" because he does not allege "when during the class period, where, how many, or how many times he purchased [the products] or was exposed to the alleged misrepresentations." (Def.'s Mem. at

17.) This argument however, drastically overstates the pleading requirements under Rule 9(b).

Claims sounding in fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Specifically, a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Numerous courts have held that Rule 9(b) is satisfied where the pleading is "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *See e.g., Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1126 (N.D. Cal. 2010).

Here, the Complaint is sufficiently detailed to allow MillerCoors to prepare an adequate defense regarding the deceptive practices alleged. Specifically, the Complaint alleges that MillerCoors (the "who") (Compl. ¶¶ 18-19) misleads consumers, including Plaintiff, to believe that Blue Moon beer is an independently brewed, craft beer (the "what") (Compl. ¶¶ 19-20) by omitting any reference to the MillerCoors name on the Blue Moon Brewing Company website, on the Blue Moon label, and in Blue Moon advertising, and by misrepresenting Blue Moon as a craft beer (the "how") (Compl. ¶¶ 18-20, 32). The Complaint further alleges that from 2011 until mid-2012 (the "when") (Compl. ¶ 21), Plaintiff frequently purchased Blue Moon from San Diego-area retailers, including Ralph's, Vons, and 7-11, for personal and family consumption (the "where") (Compl. ¶¶ 8, 21).[4] In stating the "who, what, when, where, and how" of the misconduct alleged, Plaintiff has met Rule 9(b)'s heightened pleading requirements. *See Clancy v. Bromley Tea Co.*, 2013 U.S. Dist.

---

[4] To the extent that MillerCoors seeks to muddy the water with references to hypothetical draught beer purchases, Plaintiff makes it clear that the Class is defined to include only consumers who purchased Blue Moon beer from a California retailer for personal, family, or household consumption. By definition, individuals who strictly purchased Blue Moon beer at a bar or restaurant are excluded from the Class.

20

LEXIS 112722, at *10-11 (N.D. Cal. Aug. 9, 2013) (Plaintiff satisfied Rule 9(b) where the complaint alleges "the 'who' is Bromley Tea Company and other defendants; the 'what' is nine discrete types of unlawful and deceptive claims by Defendants on the labeling and packaging of its products, [] as well as on its website; the 'when' is since 2008 and throughout the class period; the 'where' is Bromley's package labels and website.").

MillerCoors also contends that Plaintiff failed to allege "whether he saw any label or advertising before or while making any purchase." (Def.'s Mem. at 18.) This, MillerCoors argues, deprives it of critical information and leaves the company to guess as to the claims against it. (Def.'s Mem. at 18.) While it is unclear what additional information MillerCoors seeks, the Complaint specifically states, "Relying on its advertising, its placement among other craft beers, and the premium price it commanded, Plaintiff [] purchased Blue Moon believing it was a craft beer, as the term is commonly used by beer consumers and the Brewers Association." (Compl. ¶ 21.) Plaintiff further alleges that MillerCoors goes to great lengths to disassociate Blue Moon beer from the MillerCoors name by claiming that Blue Moon is brewed by Blue Moon Brewing Company, a small, limited capacity brewery located inside a baseball stadium, when in fact, Blue Moon is a mass produced beer made by MillerCoors. (Compl. ¶¶ 18-22.) Finally, Plaintiff alleges that MillerCoors uses the term "Artfully Crafted" on the Blue Moon Brewing Company website and in Blue Moon advertising to further (and falsely) portray Blue Moon as a craft beer, even though does not qualify as a craft beer. (*See* Compl. ¶¶ 15, 19.)

Plaintiff has satisfied Rule 9(b) because his Complaint provides more than enough detail to allow MillerCoors to prepare a defense as to the deceptive practices alleged.

## D.     Plaintiff Has Standing To Pursue Injunctive Relief

Finally, MillerCoors contends that Plaintiff lacks standing to assert a claim for injunctive relief because he has no intention of purchasing Blue Moon beer again.

(Def.'s Mem. at 18.) The gist of MillerCoors' argument is that because Plaintiff has already discovered the deceptive conduct alleged, there is no threat that he will be harmed again in the future. (See Def.'s Mem. at 18-20). This is simply not true.

Injunctive relief may be sought by "any person acting for the interests of itself, its members, or the general public." *Herr v. Nestle U.S.A., Inc.*, 109 Cal. App. 4th 779, 789 (2003). Under the UCL, courts have broad power "to enjoin ongoing wrongful business conduct in whatever context such activities might occur." *See Barquis v. Merchants Collection Assn.*, 7 Cal. 3d 94, 111 (1972). In order to obtain injunctive relief, a plaintiff must show a "real or immediate threat . . . that [he or she] will again be wronged in a similar way." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010). In the context of a class action, a named plaintiff may represent a class seeking injunctive relief so long as the plaintiff himself is entitled to seek such relief. *See Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).

Here, MillerCoors contends that even if it were to change the advertising, packaging and labeling of Blue Moon, it would not resolve Plaintiff's issues with the beer because Plaintiff has not shown an intent to purchase Blue Moon again in the future. (Def.'s Mem. at 20.) MillerCoors misstates the allegations in the Complaint. Specifically, Plaintiff alleges that had he known that Blue Moon is a mass produced beer made by MillerCoors, he "would not have purchased Blue Moon or would have only purchased it at a lower price." (Compl. ¶ 55 [emphasis added].) Plaintiff, like most craft beer drinkers, is willing to pay more for a beer that is independently brewed in limited quantities. The fact that Blue Moon is mass produced by MillerCoors does not necessarily mean that Plaintiff will not purchase it again in the future, but merely that he would only purchase it at a lower price.

Additionally, while a plaintiff is generally not entitled to injunctive relief based on speculation or subjective apprehension about future harm, the facts in the present case are distinguishable from those cited by MillerCoors. For example, in *Lucas v. Jos. A. Bank Clothiers, Inc.,* 2015 U.S. Dist. LEXIS 61550, at *11 (S.D.

22

Cal. May 11, 2015), the court held that plaintiffs lacked standing to assert a claim for injunctive relief because, in alleging that they would purchase clothing again if the labels accurately reflected the pre-sale prices, plaintiffs failed to established that there was a realistic threat of future harm. Similarly, in *Rahman v. Mott's LLP*, 2014 U.S. Dist. LEXIS 147102, at *18-19 (N.D. Cal. Oct. 15, 2014), the court held that although plaintiff alleged that he would likely buy Mott's apple juice again in the future, there was no likelihood of future harm because plaintiff now knows that "No Sugar Added" does not mean that the product does not contain any sugar. As such, plaintiff could not plausibly prove that he would again rely on the statement to his detriment. *Id.*

There is an important distinction in the cases cited by MillerCoors. Namely, that both plaintiffs were well aware of who had manufactured the products in question. As such, in the future they could avoid not only the product that was deceptively marketed, but the product's manufacturer as well. Here, Plaintiff alleges that MillerCoors fraudulently passes Blue Moon off as an independently brewed craft beer, in part, by concealing its ownership interest in Blue Moon. (Compl. ¶¶ 18-20.) While Plaintiff now knows that Blue Moon beer is brewed by MillerCoors, and thus not a true craft beer, nothing prevents MillerCoors from continuing to intentionally conceal its identity in order to pass off its mass produced beers as craft beers. Absent injunctive relief, MillerCoors' deceptive conduct is likely continue, yet evade review. *See Henderson v. Gruma Corp.*, 2011 U.S. Dist. LEXIS 41077, at *19-20 (N.D. Cal. Apr. 11, 2011) ("If the Court were to construe Article III standing for FAL and UCL claims as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter [] and would never have Article III standing."). As such, Plaintiff has standing to seek injunctive relief on behalf of the putative Class.

PLAINTIFF'S OPPOSITION TO                                      15-cv-01204-GPC-WVG
DEFENDANT'S MOTION TO DISMISS

**E.     In The Alternative, The Court Should Grant Plaintiff Leave To Amend**

Even where a court grants the defendant's motion to dismiss, plaintiffs are generally entitled to leave to amend, unless it is clear that pleading additional facts cannot cure the defect. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996) (leave to amend should be granted unless it would be "futile"). Further, Federal Rule of Civil Procedure 15(a) makes it clear that "leave shall be freely given when justice so requires."

Here, incorrectly concluding that the safe harbor doctrine precludes Plaintiff's claims, and that no reasonable consumer would be misled by its use of "craft" in reference to its beer, MillerCoors argues that Plaintiff should be denied leave to amend because he cannot cure the alleged deficiencies in his complaint. (Def.'s Mem. at 22.) This sort of bare conclusion is insufficient to establish futility.

Should the Court determine that any of Plaintiff's claims are deficient, Plaintiff respectfully requests that the Court grant leave to amend and allow him to cure those deficiencies.

## V.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny MillerCoors' Motion to Dismiss in its entirety, or in the alternative, grant Plaintiff leave to amend his complaint.


Dated: August 21, 2015                    **CLARK & TREGLIO**


                                           /s/ James M. Treglio
                                          _____
                                          R. Craig Clark
                                          James M. Treglio
                                          Dawn M. Berry
                                          Veronika Snoblova

                                          Attorneys for Plaintiff and the Putative Class

24

1

2

## **CERTIFICATE OF SERVICE**

3        The undersigned hereby certifies that a true and correct copy of the foregoing

4  document has been served on August 21, 2015 to all current and/or opposing counsel

5  of record, if any to date, who are deemed to have consented to electronic service via

6  the Court's CM/ECF system per CivLR 5.4(d).  Any other counsel of record will be

7  served by electronic mail, facsimile and/or overnight delivery upon their appearance

8  in this matter.

9

                                                 /s/ James M. Treglio
10                                              James M. Treglio

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28