# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVAN PARENT, an individual on behalf of himself, a class of persons similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>MILLERCOORS LLC, a Delaware Limited Liability Company authorized to do business in California, and DOES 1-50, inclusive,<br><br>Defendant. | CASE NO. 3:15-cv-1204-GPC-WVG<br><br>**NOTICE OF TENTATIVE RULING ON DEFENDANT MILLERCOORS' MOTION TO DISMISS**<br><br>[ECF No. 6] |

Before the Court is Defendant MillerCoors LLC ("Defendant" or "MillerCoors")'s Motion to Dismiss. Def. Mot. Dismiss ("Def. Mot."), ECF No. 6. The motion has been fully briefed. Pl. Resp., ECF No. 7; Def. Reply, ECF No. 12. Upon consideration of the moving papers and the applicable law, the Court issues the following tentative rulings in advance of the hearing scheduled for October 23, 2015.

## FACTUAL BACKGROUND

The facts of this case concern "Blue Moon," a popular brand of Belgian-style wheat beer owned by Defendant MillerCoors. MillerCoors is a major beer manufacturer with many well-known beer brands, including Coors Light, Miller Genuine Draft,

Miller High Life, Milwaukee's Best, Hamm's, Icehouse, Olde English, and Keystone. Compl. 14, ECF No. 1.[1] Plaintiff Evan Parent ("Plaintiff"), a "beer aficionado and home brewer," alleges that from 2011 until mid-2012, he regularly paid a price premium purchasing Blue Moon beer from San Diego-area retailers for personal and family consumption because MillerCoors created the deceptive and misleading impression that Blue Moon is a "craft beer." *Id.* at 15.

According to Plaintiff, Blue Moon does not qualify as a "craft beer" because such beers are produced by "small, independent and traditional" craft breweries as defined by the Brewers Association, a trade organization for American craft brewers, and MillerCoors is not such a brewery. *Id.* at 15. More specifically, according to the Brewers Association, "[t]o qualify as an American craft brewer, a brewery must: (a) Produce less than 6 million barrels of beer annually; (b) Be less than 25 percent owned or controlled by a non-craft brewer; and (c) Make beer using only traditional or innovative brewing ingredients."*Id.* Plaintiff alleges that MillerCoors produces more than 76 million barrels of beer on an annual basis. *Id.*

Plaintiff alleges that even though Blue Moon is not really a craft beer, MillerCoors engages in deceptive and misleading business practices to misrepresent it as a craft beer in order to capture a slice of the burgeoning craft beer market and "charge up to 50% more for Blue Moon beer than it charges for other MillerCoors products."[2] *Id.* at 15–16.

First, Plaintiff alleges that "Defendant goes to great lengths to disassociate Blue Moon beer from the MillerCoors name." *Id.* at 15. Even though Blue Moon is owned by MillerCoors, MillerCoors' ownership of Blue Moon is not disclosed on the bottle or the outer packaging of Blue Moon beers, which instead states that the product is manufactured by "Blue Moon Brewing Co." *Id.* In fact, Blue Moon is brewed by

---

[1] All page numbers cited refer to the pagination created by the CM/ECF system, not parties' original page numbers.

[2] "On average, a six pack of craft beer typically costs $2.00 to $3.00 more than a six pack of macrobrewed, or mass produced beer." Compl. 14.

MillerCoors at its Golden, Colorado, and Eden, North Carolina breweries, which also produce all of MillerCoors' other beers. Compl. 15. The Blue Moon Brewing Company ("BMBC") website also contains no reference to MillerCoors' ownership of the brand, although MillerCoors' own website lists Blue Moon among its "craft beer" brands. *Id.* Second, Plaintiff argues that Defendant's use of the registered trademark "Artfully Crafted" in the labeling and advertising for Blue Moon beer misleads consumers into thinking Blue Moon is a craft beer. Compl. 16. Third, Plaintiff argues that Blue Moon's "premium price," in line with other craft beers, as well as its "placement among other craft beers" in San Diego-area retailers, misled him into believing Blue Moon was a craft beer. *Id.*

## PROCEDURAL BACKGROUND

On April 24, 2015, Plaintiff, a resident of California, brought suit on behalf of himself and others similarly situated against Defendant, a limited liability company incorporated in Delaware and with its principal place of business in Illinois, in San Diego Superior Court. *Id.* at 12. Plaintiff pled three causes of action for (1) deceptive practices and misrepresentation in violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; (2) untrue and misleading advertising in violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; and (3) unlawful, fraudulent and unfair business practices in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*

On May 30, 2015, Defendant removed the case to federal court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). Compl. 3. This motion followed.

## LEGAL STANDARD

A Rule 12(b)(6) dismissal may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

**DISCUSSION**

**I.   Judicial Notice**

"Although generally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint, a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff['s] claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotation marks and citations omitted). Fed. R. Evid. 201(b) permits judicial notice of a fact when it is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The court may take notice of such facts on its own, and "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c). The records and reports of administrative bodies are proper subjects of judicial notice, as long as their authenticity or accuracy is not disputed. *See Mack v. South Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).

MillerCoors seeks judicial notice of the outer packaging, flat, and label of Blue Moon beer; federal trademark registrations for "Blue Moon," "Artfully Crafted," and "Blue Moon Brewing Company"; and MillerCoors' Fictitious Business Name Statement for "Blue Moon Brewing Company." Def. Mot., Exs. D, H; Def. Req. for Judicial Notice, Exs. A–D, ECF No. 6-4. Plaintiff seeks judicial notice of MillerCoors' federal trademark registrations for "Plank Road Brewery," "Third Shift Band of Brewers," and "Tenth and Blake Beer Company." Pl. Req. for Judicial Notice, Exs. 1–3, ECF No. 8.

Neither party questions the authenticity of these documents. The Court finds that these items are appropriate for judicial notice because they are matters of public record,

the parties do not dispute their authenticity, and they are central to Plaintiff's claims. *See, e.g., Welk v. Beam Suntory Imp. Co.*, No. 15-cv-328-LAB-JMA, 2015 WL 5022527, at *1–2 (S.D. Cal. Aug. 21, 2015) (taking judicial notice of label in case concerning use of the word "handcrafted" on Jim Beam bourbon labels); *Hofmann v. Fifth Generation, Inc.*, No. 14-cv-2569-JM-LB, 2015 WL5440330 (S.D. Cal. Mar. 18, 2015) (taking judicial notice of labels in case concerning the use of the words "[h]andmade" and "[c]rafted in an [o]ld [f]ashioned [p]ot [s]till" on Tito's Handmade Vodka's labels). Therefore, the Court **GRANTS** parties' requests for judicial notice.[3]

## II. Motion to Dismiss

Defendant argues that the case should be dismissed because (1) MillerCoors' use of the BMBC trade name falls within California's "safe harbor" from liability under its consumer protection laws; (2) MillerCoors' trade name and trademark registrations put Plaintiff on notice of its ownership and use of the BMBC trade name; (3) no reasonable consumer could have been misled by MillerCoors' use of "craft beer" and "Artfully Crafted," because there is no standard definition of "craft beer"; (4) Plaintiff failed to plead his claims with the requisite specificity; and (5) Plaintiff lacks standing to pursue injunctive relief because he has no intent to purchase Blue Moon beer in the future. Def. Mot. 9–10.

Plaintiff responds that (1) the safe harbor doctrine does not apply; (2) a reasonable consumer would not be put on notice by MillerCoors' trademark or listing in the fictitious business name registry; (3) the term "craft beer" is well defined, and a reasonable consumer would be deceived by MillerCoors' representation of Blue Moon as a craft beer; (4) Plaintiff adequately pled his claims; and (5) Plaintiff has

---

[3] Defendant also requests judicial notice of *Pye v. Fifth Generation, Inc.*, 2015 WL 5634600 (N.D. Fla. Sept. 23, 2015). Def.'s Second Request for Judicial Notice and Notice of Supplemental Authority, ECF No. 14. On a motion to dismiss, a court may take judicial notice of "the existence of [another court's] opinion, which is not subject to reasonable dispute over its authenticity." *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) (citation omitted). However, for the reasons discussed below in Part II.A, the Court declines to adopt *Pye's* reasoning as to the applicability of the TTB's COLA for Blue Moon to California's safe harbor exception.

standing to pursue injunctive relief. Pl. Resp. 9–28. Plaintiff also seeks leave to amend in the event that the Court grants the motion to dismiss. Pl. Resp. 29.

Because the Court finds that the safe harbor doctrine does apply, and the reasonable consumer would not likely be deceived by MillerCoors' other alleged representations, the Court **GRANTS** Defendant's motion to dismiss. However, the Court also **GRANTS** Plaintiff leave to amend his complaint to cure the deficiencies identified below.

### A. Safe Harbor Doctrine

MillerCoors argues that Plaintiff's UCL, CLRA, and FAL claims are barred by the safe-harbor exception to California's consumer protection laws. Def. Mot. 11. In *Cel-Tech Communications v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 (1999), the California Supreme Court recognized a safe harbor under the UCL for actions that the law actually bars, or for conduct the law "clearly permit[s]." *Id.* at 183. The Court explained:

> Although the unfair competition law's scope is sweeping, it is not unlimited. Courts may not simply impose their own notions of the day as to what is fair or unfair. Specific legislation may limit the judiciary's power to declare conduct unfair. If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination.

*Id.* at 182. The doctrine applies whether state or federal law has authorized the conduct at issue. *See Van Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1074 (E.D. Cal. 2010).

Courts have since extended the safe harbor doctrine to CLRA and FAL claims. *See, e.g.*, *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933–34 (9th Cir. 2011) (applying safe harbor to a CLRA claim); *Ebner v. Fresh Inc.*, 2013 WL 9760035, at *4–6 (C.D. Cal. Sept. 11, 2013) (applying safe harbor to UCL, CLRA, and FAL claims); *POM Wonderful LLC v. Coca Cola Co.*, 2013 WL 543361, at *1 (C.D. Cal. Feb.13, 2013) (applying safe harbor to UCL and FAL claims). Regulations, as well as statutes, can create safe harbors. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 & n.8 (9th Cir. 2012).

At issue in this case is whether existing regulation has specifically authorized MillerCoors' practice of listing the manufacturer of Blue Moon as "Blue Moon Brewing Co.," instead of as MillerCoors, on the label and packaging for Blue Moon beer, or merely failed to bar it. As *Cel-Tech* put it,

> [A] plaintiff may not bring an action under the unfair competition law if some other provision bars it. That other provision must actually bar it, however, and not merely fail to allow it. In other words, courts may not use the unfair competition law to condemn actions the Legislature permits. Conversely, the Legislature's mere failure to prohibit an activity does not prevent a court from finding it unfair. Plaintiffs may not "plead around" a "safe harbor," but the safety must be more than the absence of danger.

20 Cal. 4th at 184.

MillerCoors points to two regulatory regimes that they claim authorize their labeling practices. First, the Federal Alcohol Administration Act regulates the distribution of alcoholic beverages, including beer. 27 U.S.C. § 205. Under § 205(e), the Secretary of the Treasury is charged with promulgating regulations that will "will prohibit, irrespective of falsity, such statements relating to age, manufacturing processes, analyses, guarantees, and scientific or irrelevant matters as the Secretary of the Treasury finds to be likely to mislead the consumer." *Id.* The Secretary's duties have been delegated to the TTB, which has enacted regulations specifically addressing the labeling of beer products. *See Cruz v. Anheuser-Busch, LLC*, No. 14-cv-09670-AB-ASX, 2015 WL 3561536, at *4 (C.D. Cal. June 3, 2015) (citations omitted); 27 C.F.R. § 25.142–143. 27 C.F.R. § 25.142(a) states:

> Label requirements. Each bottle of beer shall show by label or otherwise the name or trade name of the brewer, the net contents of the bottle, the nature of the product such as beer, ale, porter, stout, etc., and the place of production (city and, when necessary for identification, State).

In addition, 27 C.F.R. § 25.143(a) states:

> Brewer's name. The brewer's name or trade name will be shown on each case or other shipping container of bottled beer.

Second, under Cal. Code Regs. tit. 4, § 130(a),

> The name and address of any manufacturer, bottler or packager appearing upon any label of beer must be the true name and address of such person at the time of packaging of such product. The true name of a

>manufacturer, bottler or packager shall be deemed to include a fictitious business name for which such manufacturer, bottler or packager has duly filed a Fictitious Business Name Statement pursuant to the provisions of Section 17900 et seq. of the Business and Professions Code.

Plaintiff responds that they are not challenging MillerCoors' right to use its fictitious business name of "Blue Moon Brewing Company," but the manner in which MillerCoors uses it. Pl. Resp. 18. Plaintiff relies on *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144 (2000) and *Carney v. Verizon Wireless Telecom, Inc.*, 2010 WL 1947635 (S.D. Cal. May 13, 2010) for the proposition that a determination that the defendant's conduct is lawful does not preclude separate claims that defendant's conduct is unfair and fraudulent under California's consumer protection laws. Pl. Resp. 18–21.

The Court finds Plaintiff's reliance on these cases to be misplaced. In both *Schnall* and *Carney*, the defendant engaged in independently fraudulent conduct that was separable from the conduct that was specifically authorized by law. In *Schnall*, plaintiff challenged Hertz rental car company's fuel service charge. The court found that while Hertz's imposition of a fuel service charge was authorized by law, the "confusing and misleading portions of the rental agreement and rental record which purport[ed] to disclose and explain the charge" could be considered deceptive. 78 Cal. App. 4th at 1163 ("Authorization of avoidable charges for optional services hardly amounts to permission to mislead customers about such charges.") Similarly, in *Carney*, plaintiff paid Verizon sales tax on the full retail price of a phone purchased on sale after a manager informed her that "Verizon was required by California state law to charge consumers the bundled sales tax." 2010 WL 3058106, at *1. The court found that while Verizon was authorized by law to *collect* the sales tax, the law did not require that it do so. *Id.* at *5. Hence, Verizon's inaccurate representations to the contrary were not protected by the safe harbor doctrine. *Id.* at *6.

Here, the conduct challenged by plaintiff is the same as the conduct authorized by law: MillerCoors' listing of "Blue Moon Brewing Co.," rather than MillerCoors, as the manufacturer on Blue Moon's bottle and packaging. *See* Pl. Resp. 19–20. 27 C.F.R.

§§ 25.142(a) and 25.143(a) specifically permit a beer bottle and outer packaging to show by label or otherwise the "name *or trade name*" of the brewer (emphasis added). Similarly, Cal. Code Regs. tit. 4, § 130(a) states that "[t]he true name of a manufacturer, bottler or packager shall be deemed to include a fictitious business name for which such manufacturer, bottler or packager has duly filed a Fictitious Business Name Statement pursuant to the provisions of Section 17900 et seq. of the Business and Professions Code." MillerCoors has properly registered Blue Moon Beer Company as a trade name in California's Fictitious Business Name registry. *See* Def. Mot., Ex. D. MillerCoors' use of the Blue Moon Trading Company trade name on the Blue Moon label is thus specifically authorized by federal and state regulations. This is thus a case where, as the *Schnall* court put it, "the conduct found to have been lawful was precisely the same as that claimed also to be 'unfair' and 'fraudulent.'" 78 Cal. App. 4th at 1163 (citations omitted); *see also POM Wonderful LLC v. Coca Cola Co.*, 2013 WL 543361, at *5 (C.D. Cal. Feb. 13, 2013) (finding that the safe harbor doctrine applied where Defendant's labeling practices complied with FDA regulations).

This conclusion is reinforced when the facts in the instant case are compared to those in other cases where courts found that the manufacturer's labeling practices were *not* authorized by law. In *Hofmann v. Fifth Generation, Inc.*, the district court found the safe harbor doctrine did not apply where a vodka product was labeled as "homemade." 2015 WL 5440330, at *7. The court found that no TTB regulation specifically authorized the use of "homemade" on the vodka's label, and that it was "not clear that such representations are necessarily within the TTB's regulatory purview." *Id.*; *see also Nowrouzi v. Maker's Mark Distillery, Inc.*, 2015 WL 4523551, at *4–5 (S.D. Cal. Jul. 27, 2015) (applying the same analysis). By contrast, here, federal regulations specifically address which brewer name is permitted to appear on a beer's label bottle and case or shipping containers.[4]

---

[4] In *Hofmann*, Judge Miller also questioned the applicability of the safe harbor doctrine to TTB's certificate of label approval ("COLA") process. 2015 WL 5440330, at *7. In order to implement C.F.R. regulations, the TTB requires industry members to obtain a COLA from the TTB

1   Plaintiff questions whether MillerCoors can take refuge in the safe harbor considering that "the Blue Moon Brewing Company name is trademarked for 'Bar Services; Bar featuring Microbrewery Services; [and] Brewpub Services,'" but not the "retail sale of Blue Moon beer." Pl. Resp. 20. However, as MillerCoors correctly points out, trade names and trademarks are distinguishable concepts. *See Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 908 (9th Cir. 1995). A trade name is "the name under which a business operates," while a trademark is a "word, phrase, logo, or other graphic symbol used by a manufacturer or seller to distinguish its product or products from those of others." *Black's Law Dictionary* (9th ed. 2009). MillerCoors has properly registered Blue Moon Beer Company as a trade name in California's Fictitious Business Name registry, *see* Def. Mot., Ex. D, and the C.F.R. regulations authorize labeling beers with a brewer's "trade name," not trademark. 27 C.F.R. §§ 25.142(a), 25.143(a).

Plaintiff's arguments that 27 C.F.R. §§ 7.23, 7.29(a), and 7.54(a) preclude application of the safe harbor doctrine are similarly unavailing. Pl. Resp. 15–18. First, 27 C.F.R. § 7.23 states that "[n]o label shall contain any brand name, which, standing alone, or in association with other printed or graphic matter, creates any impression or inference as to the age, origin, identity, or other characteristics of the product." However, a product's brand name refers to a "name or symbol used by a seller or manufacturer to identify goods or services and to distinguish them from competitors' goods or services." *Black's Law Dictionary* (9th ed. 2009). Since Plaintiff is not challenging the *brand name* of "Blue Moon," but the *trade name* of "Blue Moon

---

prior to the public release of the alcoholic beverage. 27 C.F.R. § 7.41(a). In *Hofmann*, defendant argued that the safe harbor doctrine necessarily applies whenever the TTB approves an alcoholic beverage's label. 2015 WL 5440330, at *7. However, Judge Miller characterized the COLA approval process as an "informal agency action" to which it was unclear whether the safe harbor doctrine applied. *Id.* at 7. *But see Cruz*, 2015 WL 3561536, at *5 (considering COLA to be a formal rulemaking procedure); *Pye*, 2015 WL 5634600, at *4 (implicitly doing the same). Judge Miller's analysis is inapplicable here, since here, it is the C.F.R. regulations themselves, rather than the TTB's COLA for Blue Moon, that authorizes Blue Moon's labeling. *See also POM Wonderful*, at *5 (finding that the safe harbor doctrine directly applied where Defendant's labeling practices complied with FDA regulations).

Brewing Company," this regulation does not apply. Second, 27 C.F.R. § 7.29(a) states:

> Statements on labels. Containers of malt beverages, or any labels on such containers, or any carton, case, or individual covering of such containers, used for sale at retail, or any written, printed, graphic, or other material accompanying such containers to the consumer, must not contain: (1) Any statement that is false or untrue in any particular, or that, irrespective of falsity, directly, or by ambiguity, omission, or inference, or by the addition of irrelevant, scientific or technical matter, tends to create a misleading impression.

However, MillerCoors' use of the BMBC trade name on the label is not a "statement," but an identification of the brewer governed by the separate provisions of 27 C.F.R. §§ 25.142(a) and 25.143(a) as discussed above. Third, 27 C.F.R. § 7.54(a) states:

> General prohibition. An advertisement of malt beverages must not contain: (1) Any statement that is false or untrue in any material particular, or that, irrespective of falsity, directly, or by ambiguity, omission, or inference, or by the addition of irrelevant, scientific or technical matter, tends to create a misleading impression.

Again, MillerCoors' use of the BMBC trade name is not a "statement."

Thus, the safe harbor doctrine applies to the extent that Plaintiff's UCL, CRLA, and FAL claims rely on MillerCoors' omission of their ownership interest, or their designation of BCBM as the brewer, on the label or packaging of Blue Moon beers.[5]

### B.    Whether a Reasonable Consumer Could Be Deceived

Plaintiff also alleges that the reasonable consumer would have been deceived by Defendant's representations in: (1) intentionally omitting MillerCoors' ownership interest on the BMBC website; (2) falsely identifying Blue Moon as a craft beer on the MillerCoors website; (3) using the "Artfully Crafted" trademark to falsely portray Blue Moon as a craft beer; and (4) pricing Blue Moon at a premium and placing it in retail stores among other craft beers. *See* Compl. 15–16.

---

[5] Since the Court finds that the safe harbor doctrine applies to MillerCoors' use of the BCBM trade name on Blue Moon labeling, and that a reasonable consumer would not likely be deceived by MillerCoors' other representations, the Court does not address Defendant's additional argument that MillerCoors' trade name and trademark registrations put Plaintiff on constructive notice of its ownership and use of the BMBC trade name. Def. Mot. 13–15. However, the Court observes that none of the cases Defendant cites for this proposition concern consumer protection statutes. *See id.* (citing *H.S.W. Enterprises, Inc. v. Woo Lae Oak, Inc.*, 171 F. Supp. 2d 135, 143 (S.D.N.Y. 2001); *Fakhri v. U.S.*, 31 Ct. Int'l Trade 1287, 1300 (2007); *Hydrotech Systems, Ltd. v. Oasis Waterpark*, 52 Cal. 3d 988, 1001 n.8 (1991)).

1    Claims under the UCL, FAL, and CLRA that representations are misleading are
2 governed by the "reasonable consumer" test, which asks whether "members of the
3 public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938
4 (9th Cir. 2008) ("The California Supreme Court has recognized that these laws prohibit
5 not only advertising which is false, but also advertising which[,] although true, is either
6 actually misleading or which has a capacity, likelihood or tendency to deceive or
7 confuse the public). A likelihood of deception means that "it is probable that a
8 significant portion of the general consuming public or of targeted consumers, acting
9 reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105
10 Cal.App. 4th 496, 508 (2003). Whether a business practice is deceptive generally
11 presents a question of fact that cannot be resolved on a motion to dismiss. *See*
12 *Williams*, 552 F.3d at 938. In rare circumstances, however, courts can conclude as a
13 matter of law that members of the public are not likely to be deceived. *See id.* at 939.
14    First, as proof that "Defendant goes to great lengths to disassociate Blue Moon
15 beer from the MillerCoors name," Plaintiff offers the allegation that "there is not a
16 single reference to MillerCoors on the Blue Moon Brewing Company website." Compl.
17 15. But even viewing that fact in the light most favorable to Plaintiff, in the same
18 sentence of the Complaint, Plaintiff acknowledges that "Blue Moon is prominently
19 displayed on the MillerCoors web site." *Id.* The Court cannot conclude that "it is
20 probable that a significant portion of the general consuming public . . . acting
21 reasonably under the circumstances," could be misled by Blue Moon's internet
22 presence when MillerCoors "prominently" displays Blue Moon on their own company
23 website.
24    Second, Plaintiff alleges that the reasonable consumer is likely to be deceived
25 by MillerCoors' false identification of Blue Moon as a craft beer on their company
26 website. *Id.* at 16. But by the Complaint's own terms, knowledge of MillerCoors'
27 ownership interest in Blue Moon would have prevented Plaintiff from considering Blue
28 Moon as a craft beer and paying a premium price for it. *See id.* As the Complaint

attests, MillerCoors is a major beer manufacturer with breweries located in eight states who produces more than 76 million barrels of beer on an annual basis. *Id.* at 15. Hence, the Court cannot conclude that the reasonable consumer, viewing Blue Moon's identification as a craft beer on MillerCoors' company website, could be misled into believing that Blue Moon is an "independently brewed, hand-crafted beer" not owned by MillerCoors. *Id.* at 16.

Third, Plaintiff alleges that the reasonable consumer is likely to be deceived by MillerCoors' use of the "Artfully Crafted" trademark into thinking that Blue Moon is a craft beer. *Id.* It should first be noted that parties dispute whether or not there is a legal or controlling definition of a "craft beer." *Compare* Def. Mot. 18–20 *with* Pl. Resp. 9–12. The Court declines to resolve this issue, because even assuming that there is such a definition, Plaintiff cannot rely on it for their argument that the phrase "Artfully Crafted" is misleading.[6] "[T]o be actionable as an affirmative misrepresentation, a statement must make a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Vitt v. Apple Computer, Inc.*, 469 Fed. Appx. 605, 607 (9th Cir. 2012) (internal quotation marks omitted) (affirming finding that descriptors "mobile," "durable," "portable," "rugged," "built to withstand reasonable shock," "reliable," "high performance," "high value," an "affordable choice," and an "ideal student laptop" were "generalized, non-actionable puffery because they are 'inherently vague and generalized terms' and 'not factual representations that a given standard has been met'"); *see also McKinney v. Google, Inc.*, 2011 WL 3862120, at *6 (N.D. Cal. Aug. 30, 2011) ("Although misdescriptions [sic] of specific or absolute characteristics of a product are actionable, generalized, vague, and unspecified assertions constitute mere

---

[6] Plaintiff only alleges one instance of MillerCoors explicitly stating that Blue Moon is a "craft beer," rather than using the phrase "Artfully Crafted." This is the allegation that Blue Moon is so identified on MillerCoors' own website. *See* Compl. 16. But as discussed above, by the Complaint's own terms, this representation could not be misleading, since a reasonable consumer would be alerted to the fact that Blue Moon is owned by MillerCoors by its being featured on the website of its corporate parent.

1  puffery upon which a reasonable consumer could not rely." (internal punctuation marks
2  omitted) (citations omitted)).

3       Plaintiff relies on a number of cases to support the proposition that MillerCoors'
4  use of the "Artfully Crafted" phrase is actionable. Pl. Resp. 14. However, none of them
5  are apposite. In *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 682
6  (2006), the court found that the "Made in USA" statement on Leatherman's tools was
7  deceptive were parts of those products were manufactured outside the United States.
8  135 Cal. App. 4th at 682. And in *Hofmann*, the court found that Fifth Generation's
9  representation of a vodka presumably mass-produced in automated modern stills as
10 "'Handmade' in old-fashioned pot stills" could mislead a reasonable consumer. 2015
11 WL5440330, at *8. In both cases, the defendant made a specific claim about the
12 method of production for a consumer product. By contrast, here, it is difficult to see
13 how the statement that Blue Moon is "artfully crafted" is "capable . . . of being
14 reasonably interpreted as a statement of objective fact."

15      Plaintiff also argues that even if "[o]n their own, the terms 'craft' and 'crafted'
16 might reasonably state MillerCoors' subjective opinion of Blue Moon beer . . . when
17 used in conjunction with other representations about the product, the terms can
18 reasonably be construed as having specific meaning, and are thus actionable." Pl. Resp.
19 11–12 (citing *Williams*, 552 F.3d at 939 n.3 (finding that use of the term "nutritious"
20 was not mere puffery where packaging's other features, including calling the product
21 "fruit juice snacks," depicting pictures of fruit, and stating that the product was made
22 with "fruit juice and other all natural ingredients," were deceptive); *Jou v. Kimberly-*
23 *Clark Corp.*, 2013 WL 6491158 at *7 (N.D. Cal. Dec. 10, 2013) (finding that use of the
24 term "natural" in the context of the phrase "pure & natural" could mislead the
25 reasonable consumer); *Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333, 1342
26 (S.D. Fla. 2014) (finding that the statement "German Quality" was not mere puffery
27 when evaluated in the context of (1) other statements on cartons of Beck's [beer], (2)
28 allegations of the defendant's overall marketing campaign and its efforts to maintain

Beck's brand identity as a German beer; (3) the statement "[b]rewed under the German Purity Law of 1516"; and (4) Beck's German heritage including its 139–year history of being brewed in Germany)). Plaintiff does not specify which other "representations about the product" they are referring to in this portion of their brief. However, elsewhere in the brief, Plaintiff argues that "MillerCoors' use of the Blue Moon Brewing Company trade name, when used in conjunction with the terms 'craft' and 'crafted' misleads consumers by implying that Blue Moon is a true craft beer." Pl. Resp. 20. But since MillerCoors' use of the BCBM trade name in Blue Moon's labeling and packaging is specifically protected by the safe harbor doctrine, Plaintiff cannot argue that MillerCoors' usage of that trade name contributes to a deceptive atmosphere or context within which MillerCoors' use of the phrase "Artfully Crafted" should be evaluated.

Nor can Plaintiff argue that other features of Blue Moon's advertising, "its placement among other craft beers," or the "premium price [Blue Moon] commanded" either provide a deceptive context or are misleading in themselves. First, Plaintiff pleads no other features of Blue Moon's advertising. Second, Plaintiff does not allege, and provides no factual allegations from which the Court could reasonably infer, that MillerCoors has any control over where retailers place Blue Moon on their shelves. Third, Plaintiff points to no case supporting the proposition that the price of a product can constitute a representation or statement about the product. *See also Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d 1163, 1169 (C.D. Cal. 2014) (finding that the price of a migraine medication did not constitute a representation or statement about the product that could support consumer claims against retailer under the UCL, CLRA, or FAL).

### C.   Injunctive Relief

MillerCoors argues that Plaintiff lacks standing to seek injunctive relief, because the Complaint states that Plaintiff has not purchased Blue Moon since finding out it is produced by MillerCoors in July 2012, and does not state that Plaintiff has any plans

to purchase Blue Moon in the future. Def. Mot. 24–28. It is well established that in order to establish standing for injunctive relief, a class plaintiff must "demonstrate a likelihood of future injury" not just to unnamed class members, but to the named plaintiff themselves. *Hodges-Durgin v. de la Vina*, 199 F.3d 1037, 1044–45 (9th Cir. 1999). Plaintiff argues that there is a still a likelihood of future injury because the Complaint does state that had he known that Blue Moon is a mass produced beer made by MillerCoors, he "would not have purchased Blue Moon or would have only purchased it at a lower price." Pl. Resp. 27. In the alternative, Plaintiff argues that there is still a likelihood of future injury because "nothing prevents MillerCoors from continuing to intentionally conceal its identity in order to pass off its mass produced beers as craft beers." Pl. Resp. 28. Neither argument is availing. First, Plaintiff's statement in the Complaint as to whether he would have purchased Blue Moon at a lower price in the past had he known it was brewed by MillerCoors does not bear on whether Plaintiff has a future intent to purchase Blue Moon. Second, the likelihood of future injury Plaintiff must establish for the purposes of standing must relate to Blue Moon beer, not MillerCoors' other products, since Plaintiff has made no allegations concerning any other MillerCoors product in the Complaint. *See Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159380, at *3. Accordingly, Plaintiff is not entitled to seek injunctive relief.

### D. Leave to Amend

Fed. R. Civ. P. 15 provides that courts should freely grant leave to amend when justice requires it. Accordingly, when a court dismisses a complaint for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (internal quotation marks omitted). Amendment may be denied, however, if amendment would be futile. *See id.*

The Court will grant Plaintiff leave to amend in order to cure the deficiencies

identified in the complaint. The Court does not find it impossible that the Plaintiff could allege other facts as to MillerCoors' advertising or sales practices that would support their claim that MillerCoors deceptively or misleadingly represents Blue Moon as a craft beer. However, the Court cautions that the Plaintiff cannot rely on MillerCoors' use of the BCBM trade name in Blue Moon's label or packaging for their consumer protection claims. Nor, standing alone, is MillerCoors' use of the "Artfully Crafted" trademark sufficient.

## CONCLUSION

Counsel are advised that the Court's rulings are tentative, and the Court will entertain additional argument during the October 23, 2015 hearing.

**IT IS SO ORDERED.**

DATED: October 21, 2015

HON. GONZALO P. CURIEL
United States District Judge