1
2
3
4
5
6
7
8

9            **UNITED STATES DISTRICT COURT**

10           **SOUTHERN DISTRICT OF CALIFORNIA**

11   EVAN PARENT, an individual on          CASE NO. 3:15-cv-1204-GPC-WVG
     behalf of himself, a class of persons
12   similarly situated, and the general    **ORDER GRANTING DEFENDANT**
     public,                                **MILLERCOORS LLC'S MOTION**
13                                          **TO DISMISS PLAINTIFF'S FIRST**
                              Plaintiff,     **AMENDED COMPLAINT**
14
        v.                                   [ECF No. 22]
15
16   MILLERCOORS LLC, a Delaware
     Limited Liability Company authorized
17   to do business in California, and
     DOES 1-50, inclusive,
18
                              Defendant.
19

20          Before the Court is Defendant MillerCoors LLC's ("Defendant" or

21   "MillerCoors") Motion to Dismiss Plaintiff's First Amended Complaint. Def. Mot.

22   Dismiss ("Def. Mot."), ECF No. 22. The motion has been fully briefed. Pl. Resp., ECF

23   No. 23; Def. Reply, ECF No. 24. Upon consideration of the moving papers and the

24   applicable law, and for the reasons set forth below, the Court **GRANTS** Defendant's

25   motion.

26                  **FACTUAL AND PROCEDURAL BACKGROUND**

27          The facts of this case concern "Blue Moon," a popular brand of Belgian-style

28   wheat beer owned by Defendant MillerCoors. MillerCoors is a major beer manufacturer

with many well-known beer brands, including Coors Light, Miller Genuine Draft, Miller High Life, Ice house, Milwaukee's Best, Keystone, and Olde English. First Amended Complaint ("Am. Compl.") 3, ECF No. 19. Plaintiff Evan Parent ("Plaintiff"), a "beer aficionado and home brewer," alleges that from 2011 until mid-2012, he regularly paid a price premium purchasing Blue Moon beer from San Diego-area retailers for personal and family consumption because MillerCoors created the deceptive and misleading impression that Blue Moon is a "craft beer." *Id.* at 9.

## I.    Initial Complaint and First Motion to Dismiss

On April 24, 2015, Plaintiff, a resident of California, brought suit on behalf of himself and others similarly situated against Defendant, a limited liability company incorporated in Delaware and with its principal place of business in Illinois, in San Diego Superior Court. Compl. 1, ECF No 1. Plaintiff pled three causes of action for (1) deceptive practices and misrepresentation in violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; (2) untrue and misleading advertising in violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; and (3) unlawful, fraudulent and unfair business practices in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*

In the initial Complaint, Plaintiff alleged that Blue Moon does not qualify as a "craft beer" because such beers are produced by "small, independent and traditional" craft breweries as defined by the Brewers Association, a trade organization for American craft brewers, and MillerCoors is not such a brewery. *Id.* at 4. More specifically, according to the Brewers Association, "[t]o qualify as an American craft brewer, a brewery must: (a) Produce less than 6 million barrels of beer annually; (b) Be less than 25 percent owned or controlled by a non-craft brewer; and (c) Make beer using only traditional or innovative brewing ingredients." *Id.* Plaintiff alleged that MillerCoors produces more than 76 million barrels of beer on an annual basis. *Id.*

Plaintiff alleged that even though Blue Moon is not really a craft beer,

MillerCoors engages in deceptive and misleading business practices to misrepresent it as a craft beer in order to capture a slice of the burgeoning craft beer market and "charge up to 50% more for Blue Moon beer than it charges for other MillerCoors products."[1] *Id.* at 4–5.

First, Plaintiff alleged that "Defendant goes to great lengths to disassociate Blue Moon beer from the MillerCoors name." *Id.* at 4. Even though Blue Moon is owned by MillerCoors, MillerCoors' ownership of Blue Moon is not disclosed on the bottle or the outer packaging of Blue Moon beers, which instead states that the product is manufactured by "Blue Moon Brewing Co." *Id*. In fact, Blue Moon is brewed by MillerCoors at its Golden, Colorado, and Eden, North Carolina breweries, which also produce all of MillerCoors' other beers. *Id*. The Blue Moon Brewing Company ("BMBC") website also contains no reference to MillerCoors' ownership of the brand, although MillerCoors' own website lists Blue Moon among its "craft beer" brands. *Id.* Second, Plaintiff argued that Defendant's use of the registered trademark "Artfully Crafted" in the labeling and advertising for Blue Moon beer misleads consumers into thinking Blue Moon is a craft beer. *Id.* at 5. Third, Plaintiff argued that Blue Moon's "premium price," in line with other craft beers, as well as its "placement among other craft beers" in San Diego-area retailers, misled him into believing Blue Moon was a craft beer. *Id.*

On May 30, 2015, Defendant removed the case to federal court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). Notice of Removal 3, ECF No. 1. On July 13, 2015, Defendant filed their first motion to dismiss. ECF No. 6. On October 26, 2015, the Court granted the first motion to dismiss. Order Granting Defendant's Motion to Dismiss ("Dismissal Order"), ECF No. 17.

First, the Court found that the safe harbor exception to California's consumer protection laws applied to the Plaintiff's UCL, CRLA, and FAL claims to the extent

[1] "On average, a six pack of craft beer typically costs $2.00 to $3.00 more than a six pack of macrobrewed, or mass produced beer." Compl. 3.

that those claims relied on MillerCoors' omission of their ownership interest, or their designation of BMBC as the brewer, on the label or packaging of Blue Moon beers. *Id.* at 12.

Second, the Court found that, based on the facts as pled in the initial Complaint, a reasonable consumer was not likely to be deceived by the Defendant's representations. The Court found that: (1) based solely on the facts pled that "there is not a single reference to MillerCoors on the Blue Moon Brewing Company website," while "Blue Moon is prominently displayed on the MillerCoors website," the Court could not conclude that the reasonable consumer could be misled by Blue Moon's internet presence; (2) standing alone, MillerCoors' use of the "Artfully Crafted" trademark was non-actionable puffery; (3) Plaintiff could not argue that other features of Blue Moon's advertising were deceptive because he had pled no other features of Blue Moon's advertising; (4) Plaintiff could not argue that Blue Moon's "placement among other craft beers" in retail stores was deceptive because Plaintiff did not allege, and provided no factual allegations from which the Court could reasonably infer, that MillerCoors has any control over where retailers place Blue Moon on their shelves; and (5) Plaintiff provided no authority supporting the proposition that the price of a product constitutes a representation or statement about the product. *Id.* at 12–16.

The Court then found that Plaintiff's allegations were sufficiently particular to satisfy Fed. R. Civ. P. 9(b)'s heightened pleading requirements for fraud cases, *id.* at 17, but that Plaintiff lacked standing to seek injunctive relief, *id.* at 19. The Court permitted Plaintiff leave to amend his complaint, but cautioned that Plaintiff could not rely on MillerCoors' use of the BMBC trade name in Blue Moon's label or packaging or, standing alone, the "Artfully Crafted" trademark to support his consumer protection claims. *Id.* at 20.

## II.    Amended Complaint and Second Motion to Dismiss

On November 25, 2015, Plaintiff filed a first amended complaint. ECF No. 19. The amended complaint makes the same legal claims as the original complaint, *id.* at

11–20, but adds a number of new factual allegations.

First, the amended complaint alleges that in addition to the Brewers Association definition, Blue Moon also does not meet the dictionary definition of a craft beer. The term "craft beer" is defined by Merriam-Webster Dictionary as a "specialty beer produced in limited quantities," by Cambridge Dictionary as "beer made using traditional methods in small, independent breweries," and by the Oxford English Dictionary as "a beer made in a traditional or non-mechanized way by a small brewery." *Id.* at 4.

Second, the amended complaint alleges that MillerCoors engages in a number of practices to produce the "wholesale fiction" that Blue Moon is a craft beer produced by a small, independent brewery, including: (a) portraying Blue Moon as having being invented independently by Dr. Keith Villa on the BMBC website, when in fact Dr. Villa was a MillerCoors employee who developed Blue Moon at the direction of MillerCoors executives; (b) portraying Blue Moon as being brewed at a "small, limited capacity brewpub known as 'The SandLot Brewery'" on the BMBC website and YouTube channel, when in fact Blue Moon is brewed at MillerCoors' Golden, Colorado and Eden, North Carolina brewing facilities; (c) directing retail establishments, through MillerCoors' network of distributors, to stock Blue Moon in the craft beer section in retail establishments; (d) endorsing retailers' misrepresentation of Blue Moon as a craft beer by permitting such retailers to use Blue Moon's trademark protected logo in advertisements identifying Blue Moon as a craft beer; (e) advertising Blue Moon as a craft beer at concert venues through MillerCoors' sponsorship and distribution agreements; (f) selling Blue Moon as a craft beer in non-retail venues, such as national restaurant chains; and (g) directing Blue Moon to be priced as a craft beer, "[t]hat is, $2.00 to $3.00, or up to 50 percent more per six pack than the average macrobrew," and thereby engaging in a practice of "falsely representing that a product has characteristics that command a premium price, and then actually charging a premium price for the product." *Id.* at 5–8.

1    This motion to dismiss followed.

2                              **LEGAL STANDARD**

3          A Rule 12(b)(6) dismissal may be based on either a "'lack of a cognizable legal

4    theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"

5    *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008)

6    (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

7          "To survive a motion to dismiss, a complaint must contain sufficient factual

8    matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

9    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

10   U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual

11   content that allows the court to draw the reasonable inference that the defendant is

12   liable for the misconduct alleged." *Id.* at 679 (citing *Twombly*, 550 U.S. at 556).

13   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

14   statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 (noting

15   that on a motion to dismiss the court is "not bound to accept as true a legal conclusion

16   couched as a factual allegation"). "The pleading standard . . . does not require 'detailed

17   factual allegations,' but it demands more than an unadorned, the

18   defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations

19   omitted). "Review is limited to the complaint, materials incorporated into the complaint

20   by reference, and matters of which the court may take judicial notice." *See Metlzer Inv.*

21   *GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

22         In analyzing a pleading, the Court sets conclusory factual allegations aside,

23   accepts all non-conclusory factual allegations as true, and determines whether those

24   nonconclusory factual allegations accepted as true state a claim for relief that is

25   plausible on its face. *Iqbal*, 556 U.S. at 676–84; *Turner v. City & Cty. of San*

26   *Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) (noting that "conclusory allegations

27   of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal")

28   (internal quotation marks and citation omitted). And while "[t]he plausibility standard

is not akin to a probability requirement," it does "ask[] for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). In determining plausibility, the Court is permitted "to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

### I.   Judicial Notice

"Although generally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint, a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff['s] claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotation marks and citations omitted). Fed. R. Evid. 201(b) permits judicial notice of a fact when it is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The court may take notice of such facts on its own, and "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c).

MillerCoors seeks judicial notice of (a) a November 16, 2015 article from The San Diego Union-Tribune entitled "*Ballast Point to be Sold to N.Y. corporation for $1B*," and (b) a press release from Nasdaq entitled "*Leading Craft Brewer Ballast Point Joins Constellation Brands.*" ECF No. 22-4. Facts that become widely known through news or other announcements, including on websites, are subject to judicial notice. *Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 458–59 (9th Cir. 1995) (taking judicial notice of newspaper article regarding widespread layoffs because the layoffs were "a fact which would be generally known in Southern California and which would be capable of sufficiently accurate and ready determination"). Neither party questions the authenticity of these documents. The Court finds that these documents are appropriate

for judicial notice because the acquisition of Ballast Point by Constellation Brands is a fact which is generally known in San Diego and capable of sufficiently accurate and ready determination.

Plaintiff seeks judicial notice of the Written Testimony of Bob Pease, Chief Executive Officer of the Brewers Association, before the Senate Committee on the Judiciary Subcommittee on Antitrust, Competition Policy and Consumer Rights on December 8, 2015, concerning the pending merger between Anheuser-Busch Inbev ("ABI") and MillerCoors. ECF No. 23-1. Information contained in official documents, including documents appearing on a governmental website, is judicially noticeable. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (judicial notice of information displayed on school district website); *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 864 F.2d 1475, 1479–80 & n.2 (9th Cir. 1989) ("We take judicial notice of these figures, contained in the reports of a public body, pursuant to Fed. R. Evid. 201(b)(2)."). However, MillerCoors objects to the use of Mr. Pease's testimony to establish the truth of the matters stated therein, arguing that the Court should only take judicial notice of the limited fact that Mr. Pease made the statements contained in his written testimony. ECF No. 25 at 1–2. "[A] court may not take judicial notice of a fact that is 'subject to reasonable dispute.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citing Fed. R. Evid. 201(b)). Thus, while the Court takes judicial notice of the limited fact that Mr. Pease made the statements contained in his written testimony, the Court declines to rely on Mr. Pease's testimony to establish the truth of the matters stated therein.

## II.    Motion to Dismiss

Defendant argues that the case should be dismissed because Plaintiff fails to allege an actionable misrepresentation, since (1) a reasonable consumer would not be misled by MillerCoors' advertising; (2) MillerCoors is not liable for third-party representations; and (3) MillerCoors' alleged pricing of Blue Moon is not a representation. Def. Mot. 6–16. Because the Court agrees, the Court **GRANTS**

1    Defendant's motion to dismiss.[2]

2        **A.    Legal Standard**

3        Claims under the UCL, FAL, and CLRA that representations are misleading are

4    governed by the "reasonable consumer" test, which asks whether "members of the

5    public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938

6    (9th Cir. 2008) ("The California Supreme Court has recognized that these laws prohibit

7    not only advertising which is false, but also advertising which[,] although true, is either

8    actually misleading or which has a capacity, likelihood or tendency to deceive or

9    confuse the public."). A likelihood of deception means that "it is probable that a

10   significant portion of the general consuming public or of targeted consumers, acting

11   reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105

12   Cal. App. 4th 496, 508 (2003). Whether a business practice is deceptive generally

13   presents a question of fact that cannot be resolved on a motion to dismiss. *See*

14   *Williams*, 552 F.3d at 938. In rare circumstances, however, courts can conclude as a

15   matter of law that members of the public are not likely to be deceived. *See id.* at 939.

16       **B.    Whether a Reasonable Consumer Could Be Misled By**

17            **MillerCoors' Advertising**

18       Defendant overstates the scope of the Court's previous findings when it argues

19   that "[t]he Court has already found that no reasonable consumer could be misled by

20   Blue Moon's internet presence." Def. Mot. 6. What the Court found was that, "[b]ased

21   on those facts standing alone" that "'there is not a single reference to MillerCoors on

22   the Blue Moon Brewing Company website'" while "Blue Moon is prominently

23   displayed on the MillerCoors web site," the Court could not conclude that a reasonable

24   consumer could be misled by Blue Moon's internet presence. Dismissal Order 13.

25

26            [2] Because the Court finds that Plaintiff fails to allege an actionable
27   misrepresentation, the Court need not address Defendant's additional arguments that
     (1) Plaintiff failed to plead his claims with the requisite particularity; (2) Plaintiff failed
28   to allege reliance; (3) Plaintiff failed to allege materiality; and (4) Plaintiff lacks
     standing to pursue injunctive relief because he has no intent to purchase Blue Moon
     beer in the future. *See* Def. Mot. 16–24.

Plaintiff has now alleged additional features of MillerCoors' internet advertising of Blue Moon on both the BMBC website and YouTube channel that must be considered by the Court. Am. Compl. 5–6.

That said, the Court agrees with Defendant that the three internet advertisements identified by Plaintiff and featured on the BMBC website (bluemoonbrewingcompany.com) and YouTube channel, "The Story of Blue Moon," "The SandLot Guys," and "Our Approach to Brewing," constitute non-actionable puffery.

"[T]o be actionable as an affirmative misrepresentation, a statement must make a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Vitt v. Apple Computer, Inc.*, 469 Fed. Appx. 605, 607 (9th Cir. 2012) (internal quotation marks omitted) (affirming finding that descriptors "mobile," "durable," "portable," "rugged," "built to withstand reasonable shock," "reliable," "high performance," "high value," an "affordable choice," and an "ideal student laptop" were "generalized, non-actionable puffery because they are 'inherently vague and generalized terms' and 'not factual representations that a given standard has been met'"); *see also McKinney v. Google, Inc.*, 2011 WL 3862120, at *6 (N.D. Cal. Aug. 30, 2011) ("Although misdescriptions [sic] of specific or absolute characteristics of a product are actionable, generalized, vague, and unspecified assertions constitute mere puffery upon which a reasonable consumer could not rely." (internal punctuation marks omitted) (citations omitted)).

Upon review of the three advertisements, the Court finds that Plaintiff has not identified any affirmative misrepresentations made therein. The contents of the advertisements are as follows: "The Story of Blue Moon" is a 1 minute, 40 second video on YouTube wherein Keith Villa describes his background as a brewer, the influence of Belgium himself and his development of Blue Moon, and the ingredients and flavor profile of Blue Moon beer. *See* Def. Mot., Ex. B. "Our Approach to Brewing" is a 2 minute, 9 second video on the BMBC website which depicts Keith

Villa and a number of other brewers at the "Sandlot" brewery discussing the development of seasonal varietals of Blue Moon featuring ingredients such as spearmint and frankincense. *See id.* Finally, "Meet the Brewers" is a webpage on the BMBC website which offers biographies of Keith Villa and four other BMBC employees, including the three "SandLot Guys." *See id.*, Ex. G.

Plaintiff alleges that the three advertisements "falsely represent that Blue Moon is brewed by a small, independent craft brewery, rather than the second largest brewing company in the United States" by (1) depicting Blue Moon as being brewed in 10-barrel, or 310 gallon brew tanks, when Blue Moon is generally brewed in 60,000 to 80,000 gallon tanks; (2) depicting MillerCoors employee Keith Villa as "founder" and brew master; (3) depicting a small, brick building with a sign that reads "Blue Moon Brewing Company at The SandLot" as the brewery that produces Blue Moon beer; and (4) suggesting that Blue Moon is brewed at "The SandLot" by referring to the Blue Moon brewers as "The SandLot Guys." Am. Compl. 5–6; Pl. Mot. 15–16. Finally, Plaintiff argues that although the BMBC website and YouTube channel "stop short of calling Blue Moon a craft beer, they feature all of the elements necessary to depict a craft beer." Pl. Mot. 16.

However, Plaintiff fails to point to any "specific and measurable claim[s], capable of being proved false or of being reasonably interpreted as a statement of objective fact" made in the advertisements. First, while "The Story of Blue Moon" does contain brief images of a Blue Moon brewery with comparatively small brewing tanks, nowhere in the video is it stated that the brewery depicted is the only place in which Blue Moon is produced. *See* Def. Mot., Ex. B.

Second, while the video does depict Keith Villa as the "brewmaster" and the formulator of Blue Moon's original recipe, "Belgian White," MillerCoors claims, and Plaintiff does not dispute, that Keith Villa did create Blue Moon Belgian White in 1995. *See* Def. Mot. 8. More importantly, nowhere in either "The Story of Blue Moon" or "Our Approach to Brewing" videos is it stated that Blue Moon originated from an

1  independent brewery.

2      Third, MillerCoors claims, and Plaintiff does not dispute, that "the SandLot"

3  brewery was indeed where Blue Moon Belgian White was first produced in 1996. Def.

4  Mot. 10. And again, nowhere in the "Our Approach to Brewing" video is it represented

5  that Blue Moon is currently produced only out of the SandLot brewery. *See* Def. Mot.,

6  Ex. B.

7      Fourth, the biographies of the "SandLot Guys" brewers on the BMBC website

8  do not contain any affirmative representations that Blue Moon is brewed by a small,

9  independent brewery. *See* Def. Mot., Ex. G.

10     Finally, as Plaintiff acknowledges, nowhere in these advertisements is Blue

11  Moon described as or stated to be a craft beer.

12     Thus, the Court agrees with Defendant that at best, these advertisements contain

13  "generalized, vague, and unspecified assertions" that amount to "mere puffery upon

14  which a reasonable consumer could not rely."[3]

15                    **C.     Whether Defendant is Liable for Third-Party Representations**

16     Defendant argues that Plaintiff's claims must be dismissed to the extent that they

17  are premised on third-party conduct. The Court agrees. Plaintiff alleges that

18  MillerCoors "requires that retail establishments stock Blue Moon among the craft

19  beers," "endorses third-party representations that misidentify[] Blue Moon as a craft

20  beer," "[t]hrough its sponsorship and distribution agreements . . . falsely advertises

21  Blue Moon as a craft beer at various concert and sporting venues," and either directs

22  or consents to the selling of blue Moon as a craft beer in non-retail establishments, such

23

24          [3] Defendant also argues that the terms "craft" and "craft beer" are not actionable
25  statements. Def. Mot. 12. However, the Court need not decide the issue of whether
    "craft" or "craft beer" can ever be an actionable statement, because as Defendant points
26  out, *id.*, Plaintiff nowhere alleges that MillerCoors refers to Blue Moon as a craft beer
    in its advertising, *see* Am. Compl. 5–6. Plaintiff did previously allege that MillerCoors
27  referred to Blue Moon as a craft beer on its own corporate website, but as the Court
    previously observed, "the Court cannot conclude that the reasonable consumer,
28  viewing Blue Moon's identification as a craft beer on MillerCoors' company website,
    could be misled into believing that Blue Moon is an 'independently brewed, hand-
    crafted beer' not owned by Miller Coors." Dismissal Order 14.

1   as "national restaurant chains such as Applebee's and TGI Friday's." Def. Mot. 5–8.

2          However, as Defendant correctly points out, unfair competition claims cannot

3   be predicated on vicarious liability. *Emery v. Visa Internat. Serv. Ass'n*, 95 Cal. App.

4   4th 952, 960 (2002) ("The concept of vicarious liability has no application to actions

5   brought under the unfair business practices act." (quoting *People v. Toomey*, 157 Cal.

6   App. 3d 1, 14 (1984)) (internal quotation marks omitted)). In the context of false

7   advertising, there is no duty to investigate the truth of statements made by others. *Id.*

8   at 964 (citing *McCulloch v. Ford Dealers Advertising Assn.*, 234 Cal. App. 3d 1385,

9   1391 (1991); *Walters v. Seventeen Magazine*, 195 Cal. App. 3d 1119, 1122 (1987)).

10  "A defendant's liability must be based on his personal 'participation in the unlawful

11  practices' and 'unbridled control' over the practices that are found to violate section

12  17200 or 17500." *Id.* (citing *Toomey*, 157 Cal. App. 3d at 15).

13         Plaintiff does not allege such "personal participation" or "unbridled control"

14  here. Specifically, Plaintiff alleges that the way Defendant "requires that retail

15  establishments stock Blue Moon among the craft beers" is that Defendant "contracts

16  with a network of distributors, who in turn contract with retailers based on Defendant's

17  requirements, to ensure that Blue Moon is stocked and sold in the retailer's craft beer

18  section." Am. Compl. 6. Plaintiff does not plead any specific features of the alleged

19  agreements between MillerCoors and the distributors that would enable MillerCoors

20  to be able to exercise "unbridled control" by proxy over the retailers, who are alleged

21  to contract with the distributors, not MillerCoors. And indeed, in the next sentence of

22  the amended complaint, Plaintiff retreats from the claim that Defendant actually

23  "requires" retailers to stock Blue Moon in the craft beer section, continuing,

24  "[a]ccordingly, Defendant is not only aware that this practice occurs, but encourages

25  it, and *whenever possible*, requires it." *Id.* (emphasis added). Plaintiff's allegations in

26  this regard thus appear to be conclusory, and lacking in the factual content that would

27  allow the Court to draw the reasonable inference that the defendant is liable for the

28  misconduct alleged.

1       Next, Plaintiff alleges, without any factual support, that Defendant endorses third

2   party advertisements for craft beer sales, which include Blue Moon, based on the

3   advertisements featuring Defendant's trademark. At best, Plaintiff alleges that because

4   advertisements created by third parties "feature Defendant's trademark protected logo,"

5   such advertisements "were created with Defendant's knowledge and consent, if not at

6   Defendant's direction." *See, e.g.*, Am. Compl. 7. However, "the law is clear and

7   dispositive [that a] trademark owner's grant of permission to another to use the owner's

8   mark, combined with efforts to 'police' such use, do not make the user the agent or

9   intermediary of the owner. The owner may retain sufficient control to protect and

10  maintain its interest in the mark without establishing an agency relationship." *Emery*,

11  95 Cal. App. 4th at 961 (citation omitted). Put another way, "[t]he use of such a mark

12  does not constitute an endorsement." *Id.* at 964 (citing *New Kids on the Block v. New*

13  *America Pub., Inc.*, 971 F. 2d 302, 308–309 (9th Cir. 1992)).

14      Similarly, the claims regarding false advertising at concert and sporting venues

15  are based on unspecified sponsorship agreements and a concession stand which

16  features the Blue Moon logo and reads "craft beer," while the claims regarding false

17  advertising at non-retail venues are based on the control allegedly exercised by

18  MillerCoors by proxy through its distributors and the menus and print advertisements

19  of national restaurant chains such as Applebee's and TGI Friday's. Am. Compl. 7.

20  Again, a third party's use of a trademark does not constitute an endorsement by the

21  trademark owner.[4]

22      Accordingly, the Court finds that Defendant is not liable for the third party

23  representations of Blue Moon as a craft beer alleged by Plaintiff.

24

25      [4] Plaintiff also argues that MillerCoors might be liable for the actions of third

26  parties under an "aiding and abetting" theory. Pl. Resp. 20. Again, however, Plaintiff
    does not plead a conspiracy to defraud between MillerCoors and third parties. *See*

27  *People v. Bestline Products, Inc.*, 61 Cal. App. 3d 879, 918 (1976). Similarly, in his
    response, Plaintiff for the first time alleges that "[b]ecause MillerCoors owns many of

28  its distributors in the state of California, the trier of fact could reasonably find that an
    agency relationship exists." Pl. Resp. 20. However, Plaintiff did not allege that
    MillerCoors owned any of its distributors anywhere in the amended complaint.

**D.      Whether Defendant's Pricing of Blue Moon Constitutes a Representation**

Finally, Defendant argues that MillerCoors' pricing of Blue Moon cannot constitute a misrepresentation. The Court agrees. The Court previously found that Plaintiff had failed to point to any case "supporting the proposition that the price of a product can constitute a representation or statement about the product." Dismissal Order 16 (citing *Boris v. Wal-Mart Stores, Inc*., 35 F. Supp. 3d 1163, 1169 (C.D. Cal. 2014) (finding that the price of a migraine medication did not constitute a representation or statement about the product that could support consumer claims against retailer under the UCL, CLRA, or FAL)). Plaintiff has again failed to do so here. *See* Pl. Resp. 11 (acknowledging that courts "generally" only "consider product pricing in consumer protection litigation . . . in the context of calculating damages").

**III.    Leave to Amend**

Fed. R. Civ. P. 15 provides that courts should freely grant leave to amend when justice requires it. Accordingly, when a court dismisses a complaint for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (internal quotation marks omitted). Amendment may be denied, however, if amendment would be futile. *See id.*

The Court already granted Plaintiff leave to amend once before in order to cure the deficiencies identified in the original complaint. *See* Dismissal Order 20. In that Order, the Court stated that it "d[id] not find it impossible that the Plaintiff could allege other facts as to MillerCoors' advertising or sales practices that would support their claim that MillerCoors deceptively or misleadingly represents Blue Moon as a craft beer." *Id.* Having already given Plaintiff a second opportunity to plead his case, and having found the merits lacking, the Court finds that at this juncture, amendment would be futile. Accordingly, the Court **DENIES** Plaintiff leave to amend.

1

**CONCLUSION**

2

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

3

1.    Defendant MillerCoors' Motion to Dismiss Plaintiff's First Amended

4

Complaint, ECF No. 22, is **GRANTED**.

5

2.    Plaintiff is **DENIED** leave to amend.

6

**IT IS SO ORDERED.**

7

8

DATED:  June 16, 2016

9

10

HON. GONZALO P. CURIEL
United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28